**Terri CHESTER, Plaintiff,**

v.

**NORTHWEST IOWA YOUTH EMERGENCY SERVICES CENTER and Steve D. Geringer, Defendants.**

**No. C 93–4024.**

United States District Court,
N.D. Iowa,
Western Division.

Oct. 4, 1994.

---

William Cook and John Cook, Jr., of Herrick, Ary, Cook, Cook, Cook, & Cook, Cherokee, IA, for plaintiff.

Sam S. Killinger, of Rawlings, Neiland, Probasco, Killinger, Ellwanger, Jacobs & Mohrhauser, Sioux City, IA, for defendant Steve D. Geringer.

Doug Phillips of Klass, Hanks, Stoos, Stoik, Villone, Sioux City, IA, and John A. Wibe of Martin, Wibe & Cozine, Cherokee, IA, for defendant YES Center.

## ORDER RE: DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

BENNETT, District Judge.

I. PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 703

II. STANDARDS FOR SUMMARY JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . 704

III. FINDINGS OF FACT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 706
 A. Undisputed Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 706
 B. Disputed Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 707

IV. LEGAL ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 708
 A. The Intentional Infliction Of Emotional Distress Claim . . . . . . . . . . . . . . 708
 1. Elements Of The Tort . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 709
 2. The Outrageousness Of Defendants' Conduct . . . . . . . . . . . . . . . . . . . . 709
 3. Sufficiency Of Plaintiff's Emotional Distress . . . . . . . . . . . . . . . . . . . . 711
 4. Preemption By The Iowa Civil Rights Act . . . . . . . . . . . . . . . . . . . . . . 712
 B. Subject Matter Jurisdiction Over The Title VII Claims . . . . . . . . . . . . . . 715
 C. Lack Of A Federal Question . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 718

V. THE MOTION TO DISMISS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 720

VI. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 720

This case involves claims of sexual harassment, wrongful discharge, and intentional infliction of emotional distress brought by the assistant director of a juvenile detention center against the center and its supervisor. Defendants have independently moved for summary judgment on some of the claims in the complaint. The supervisor's and the center's motions for summary judgment require the court to examine the effect of the exclusive remedy provisions of the Iowa Civil Rights Act, former Iowa Code Ch. 601A, now Iowa Code Ch. 216, on other causes of action. The supervisor's motion for summary judgment requires the court to examine the sufficiency of proof required under Iowa law for each element of the common law tort of intentional infliction of emotional distress.

The center's motion requires the court to consider the proper method of determining the number of employees and identity of the employer under 42 U.S.C. § 2000e(b) in a case involving a facility created by eleven counties in northwest Iowa.

## I. PROCEDURAL BACKGROUND

Terri Chester (Chester) filed her complaint in this matter on March 1, 1993, following her dismissal from her position as assistant director of the defendant Northwest Iowa Youth Emergency Services Center (YES Center). The original complaint was in five counts, the first four of which were against the YES Center, and the last of which was

against both the YES Center and defendant Steve D. Geringer (Geringer), the director of the YES Center. Count I alleged sexual harassment by creation of a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Count II alleged quid pro quo sexual harassment in violation of Title VII. Count III presented a claim of sexual discrimination in violation of former Iowa Code Ch. 601A, now Iowa Code Ch. 216, which parallels the plaintiff's Title VII claims. Count IV alleged wrongful dismissal in violation of Iowa Code § 79.29, which prohibits discharge of an employee of a political subdivision as a reprisal for a disclosure of any information to public officials. Count V alleged common law intentional infliction of emotional distress. On July 13, 1994, Chester was granted leave to amend the complaint to add Geringer as a defendant in Counts I, II and III. On September 23, 1994, Geringer moved to dismiss Counts I, II and III against him on the ground that such claims were barred by Chester's failure to bring them within 90 days of receiving "right to sue" letters from the Iowa Civil Rights Commission and the Equal Employment Opportunity Commission.

On April 1, 1994, Geringer moved for summary judgment on the only claim then brought against him, the claim of intentional infliction of emotional distress. Geringer's motion asserts that Chester can make no sufficient showing as a matter of law on any of the elements of the tort. Geringer also argues that the tort claim in Count V is barred by the exclusive remedy provisions of the Iowa workers' compensation scheme, Iowa Code § 85.20. Chester resisted the motion on April 15, 1994. On May 20, 1994, the YES Center moved for summary judgment on Counts I, II and V of the complaint. The YES Center argues that the tort claim in Count V is preempted by Iowa Code Ch. 601A. The YES Center also argues that the court has no subject matter jurisdiction over Counts I and II because 42 U.S.C. § 2000e is applicable only to employers with fifteen or more employees, and the YES Center did not have sufficient employees. Chester resisted the YES Center's motion for summary judgment on June 9, 1994. On May 23, 1994,

Geringer filed his joinder in the YES Center's motion for summary judgment. Although Geringer's joinder states that Geringer "joins in and adopts all of the filings of the YES Center with regard to the Motion for Summary Judgment filed by the YES Center," its prayer is only for dismissal of Count V. Count V was the only one on which Geringer was a defendant at that time. As well as moving to dismiss Counts I, II and III, on September 23, 1994, Geringer also filed a supplemental motion for summary judgment on Count V on the additional ground that Chester's remedy under Count III, if any, would be exclusive as to the conduct alleged in Count V. Chester resisted the supplemental motion for summary judgment on September 27, 1994.

Oral argument was held on the motions for summary judgment on September 27, 1994. Chester was represented at the hearing by counsel William Cook and John Cook, Jr., of Herrick, Ary, Cook, Cook, Cook & Cook, in Cherokee, Iowa. Geringer was represented by counsel Sam S. Killinger, of Rawlings, Neiland, Probasco, Killinger, Ellwanger, Jacobs & Mohrhauser, of Sioux City, Iowa. The YES Center was represented by counsel Doug Phillips of Klass, Hanks, Stoos, Stoik, Villone, of Sioux City, Iowa, and John A. Wibe of Martin, Wibe & Cozine, of Cherokee, Iowa. This matter is now fully submitted. The motions were well-briefed and well-argued by counsel for all parties.

## II. STANDARDS FOR SUMMARY JUDGMENT

The Eighth Circuit recognizes "that summary judgment is a drastic remedy and must be exercised with extreme care to prevent taking genuine issues of fact away from juries." *Wabun–Inini v. Sessions*, 900 F.2d 1234, 1238 (8th Cir.1990). On the other hand, the Federal Rules of Civil Procedure have authorized for nearly 60 years "motions for summary judgment upon proper showings of the lack of a genuine, triable issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). Thus, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as

an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Wabun–Inini*, 900 F.2d at 1238 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986)); *Hartnagel v. Norman*, 953 F.2d 394, 396 (8th Cir.1992).

■ The standard for granting summary judgment is well established. *Rule 56* of the Federal Rules of Civil Procedure states in pertinent part:

Rule 56. Summary Judgment

(b) For Defending Party. A party against whom a claim ... is asserted ... may, at any time, move for summary judgment in the party's favor as to all or any part thereof.

(c) Motions and Proceedings Thereon.... *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*

*Fed.R.Civ.P.* 56(b) & (c) (emphasis added); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Munz v. Michael*, 28 F.3d 795, 798 (8th Cir.1994); *Roth v. U.S.S. Great Lakes Fleet, Inc.*, 25 F.3d 707, 708 (8th Cir. 1994); *Cole v. Bone*, 993 F.2d 1328, 1331 (8th Cir.1993); *Woodsmith Publishing Co. v. Meredith Corp.*, 904 F.2d 1244, 1247 (8th Cir.1990); *Wabun–Inini*, 900 F.2d at 1238 (citing *Fed.R.Civ.P.* 56(c)).[1] A court considering a motion for summary judgment must view all the facts in the light most favorable to the nonmoving party, here Chester, and give Chester the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold,*

*Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)); *Munz v. Michael*, 28 F.3d 795, 796 (8th Cir.1994); *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir. 1994); *Johnson v. Group Health Plan, Inc.*, 994 F.2d 543, 545 (8th Cir.1993); *Burk v. Beene*, 948 F.2d 489, 492 (8th Cir.1991); *Coday v. City of Springfield*, 939 F.2d 666, 667 (8th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1170, 117 L.Ed.2d 416 (1992).

■ Procedurally, the moving parties, Geringer and the YES Center, bear "the initial responsibility of informing the district court of the basis for their motion and identifying those portions of the record which show lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552–54; *see also Reed v. Woodruff County, Ark.*, 7 F.3d 808, 810 (8th Cir. 1993). Geringer and the YES Center are not required by *Rule 56* to support their motion with affidavits or other similar materials negating the opponent's claim. *Id.*

"When a moving party has carried its burden under *Rule 56(c)*, its opponent must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356. Chester is required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Fed.R.Civ.P.* 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Martin v. ConAgra, Inc.*, 784 F.Supp. 1394, 1395 (Iowa 1992). Although "direct proof is not required to create a jury question, ... to avoid summary judgment, 'the facts and circumstances relied upon must attain the dignity of substantial evidence and must not be such as merely to create a suspicion.'" *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985) (quoting *Impro Products, Inc. v. Herrick*, 715 F.2d 1267, 1272 (8th Cir.1983), *cert. denied*, 465 U.S. 1026, 104 S.Ct. 1282, 79 L.Ed.2d 686 (1984)), *cert. denied*, 474 U.S.

---

1. An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v. Norman*, 953 F.2d 394 (8th Cir.1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)). "Only disputes over facts that

might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Hartnagel*, 953 F.2d at 394.

1057, 106 S.Ct. 798, 88 L.Ed.2d 774 (1986). The necessary proof that the nonmoving party must produce is not precisely measurable, but it must be "enough evidence so that a reasonable jury could return a verdict for the nonmovant." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257, 106 S.Ct. 2505, 2515, 91 L.Ed.2d 202 (1986); *Allison v. Flexway Trucking, Inc.,* 28 F.3d 64, 66 (8th Cir.1994); *Martin,* 784 F.Supp. at 1395.

 In *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11, *Celotex,* 477 U.S. at 323–24, 106 S.Ct. at 2552–53, and *Matsushita,* 475 U.S. at 586–87, 106 S.Ct. at 1355–56, the Supreme Court established that a summary judgment motion should be interpreted by the trial court to accomplish its purpose of disposing of factually unsupported claims, and the trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Johnson v. Enron Corp.,* 906 F.2d 1234, 1237 (8th Cir.1990). The trial court, therefore, must "assess the adequacy of the nonmovants' response and whether that showing, on admissible evidence, would be sufficient to carry the burden of proof at trial." *Hartnagel,* 953 F.2d at 396 (citing *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552). If Chester fails to make a sufficient showing of an essential element of a claim with respect to which she has the burden of proof, then Geringer and the YES Center are "entitled to judgment as a matter of law." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552; *Woodsmith,* 904 F.2d at 1247. However, if the court can conclude that a reasonable trier of fact could return a verdict for the nonmovant, then summary judgment should not be granted. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *Burk,* 948 F.2d at 492; *Woodsmith,* 904 F.2d at 1247. With these standards in mind, the court turns to consideration of the defendants' motions for summary judgment.

### III. FINDINGS OF FACT

#### A. Undisputed Facts

The parties' submissions show that the following facts are undisputed. The YES Center, which opened in 1989, is a juvenile detention center for children under the age of eighteen located on the grounds of the Cherokee Mental Health Facility in Cherokee, Iowa. The YES Center is a multi-county facility operated pursuant to Iowa Code Ch. 232 and was established following an agreement among the counties pursuant to Iowa Code Ch. 28E to create a Northwest Iowa Multicounty Regional Juvenile Detention Center. The YES Center is governed by a board made up of one member from the Board of Supervisors of each of the eleven member counties that created the center. Its daily operations are supervised by an Executive Board made up of some of the members of its governing board.

Both Chester and Geringer applied for the position of director of the YES Center when it opened. Geringer was hired to fill that position, but Chester was eventually hired as assistant director beginning in January of 1990. Chester does not have a formal written contract of employment with the YES Center, but disputes that she is an at-will employee. Geringer is responsible for the day-to-day operations of the facility. Geringer and Chester are the only salaried employees of the YES Center; all other Center employees are paid an hourly wage. During 1990, the Center itself never had more than fifteen employees and during 1991 the Center had fifteen or more employees for only nine weeks.

During her employment at the YES Center, Chester had three favorable employment reviews during which she did not indicate displeasure with her position or co-employees. However, matters changed after an incident involving a young male resident at the YES Center, referred to here as "Ryan," on September 28, 1991. "Ryan" had become disruptive, was cursing, throwing things, and spitting on the walls. Chester directed three employees to pick up the boy and he was required to clean up the spit. The parties disagree on exactly what physical actions were taken in picking up and holding "Ryan," but the details of the incident are not pertinent here.

Geringer, who was a mandatory child abuse reporter, decided that the incident must be reported to the Department of Hu-

man Services. On October 1, 1991, Geringer also gave Chester a warning and a written evaluation and discussion concerning the "Ryan incident" and other employment matters.[2] On October 8, 1991, "Ryan's" juvenile court officer, Glenn Barngrover, wrote to Geringer expressing his concern over the "Ryan incident." Barngrover stated that

> when incidents like this occur, it shakes the confidence of the referring officers and can have an overall negative effect on your program. If these types of incidents continue to occur, I will have no other choice but to discontinue using your facility for Crawford and Ida Counties.

Plaintiff's Resistance to Defendant Geringer's Statement of Undisputed Facts, p. 15. The Executive Board of the YES Center met at the Cherokee County Courthouse on October 8, 1991, and voted to terminate Chester's employment.

On October 7, 1991, before the Executive Board voted to terminate Chester's employment, Chester delivered to Geringer's office a formal grievance alleging sexual harassment of Chester by Geringer and a number of other matters concerning Geringer's conduct towards Chester and other members of the staff, Geringer's handling of records, and possible code violations at the YES Center. Geringer received this grievance on October 8, 1991.

### B. Disputed Facts

Chester alleges a great many additional facts which she argues are material. These facts detail the allegedly sexually harassing conduct of Geringer during Chester's employment with the YES Center[3] and her

**2.** As to the "Ryan incident," the warning states as follows:

> AREAS THAT REQUIRE IMPROVEMENTS: (1) DUE TO THE INCIDENT SEPT. 28, 1991, AFTER MUCH CONCERN AND DISCUSSION, I FEEL THAT YOU HANDLED THE SITUATION IN A VERY UNPROFESSIONAL MANNER. I MUST STRESS TO YOU THAT NO CHILD WILL BE PHYSICALLY MADE TO CLEAN UP A MESS. YOU HAD STATED THAT YOU HAVE DONE THIS PROCEDURE OTHER TIMES IN A PREVIOUS JOB. I AGAIN WILL STRESS THAT THIS PROCEDURE MUST NEVER OCCUR AGAIN IN THIS CENTER AND THAT THIS JUVENILE DETENTION CENTER IS RUN DIFFERENT THAN PREVIOUS JOBS YOU MIGHT COMPARE TO. DUE [sic] THIS SITUATION, I FEEL THAT I MUST GIVE YOU A VERBAL WARNING AND INFORM YOU THAT IF THIS TYPE OF SITUATION HAPPENS AGAIN, YOU WILL BE GIVEN A WRITTEN WARNING AND/OR MORE SERIOUS CONSEQUENCE [sic] MAY OCCUR.

Plaintiff's Resistance to Defendant Geringer's Statement of Undisputed Facts, p. 13.

**3.** In her complaint, Chester alleges the following conduct:

a. Geringer requested the plaintiff to purchase an offensive and sexually suggestive birthday card for a Yes Center board member.

b. Geringer demanded the plaintiff accompany him to observe a video tape demonstrating a pap smear.

c. Geringer told repeated sexual stories to the plaintiff.

d. Geringer directly questioned the plaintiff about her own sexual personal life.

e. Geringer subjected the plaintiff to sexually suggestive drawings and comics.

f. Geringer openly discussed his own sexual preferences and practices in the presence of the plaintiff.

g. Geringer made sexually explicit comments about co-workers, employees and suppliers of the Yes Center. On one occasion, in reference to a supplier, Geringer stated that he would "like her body on his body anytime." This instance was repeated to the executive board of the Yes Center.

h. Geringer used vulgar expletives in his every day vocabulary, in the presence of the plaintiff and other Yes Center employees.

i. Geringer referred to female employees, in the presence of the plaintiff, as "bitches." He also refereed [sic] to another employee, in the presence of the plaintiff, as a "fag."

j. Geringer made sexually related comments to staff of the Yes Center regarding the length of a client's penis which he observed during a strip search.

k. When the plaintiff informed Geringer that she was pregnant, he responded that he didn't care as long as "the baby wasn't his."

l. Geringer commented to the plaintiff on his activities in spraying a semen-like substance at an adult bookstore in Sioux City, Iowa.

m. Geringer made repeated suggestions to the plaintiff that she should accompany him to a convention and she should share the same bed with him.

n. Geringer attached a note to the clothed buttocks of a female employee, and said to her "cute butt."

o. Geringer told the plaintiff that he hired her for two reasons: to have fun and for income.

physical symptoms of emotional distress that allegedly resulted from Geringer's actions.[4]

At the very least, Chester argues that genuine issues of material fact exist as to whether Geringer's conduct was "outrageous," whether Geringer's conduct was intentionally directed toward Chester and was personal in nature, whether Chester's symptoms of emotional distress were caused by Geringer's actions, and whether Chester suffered injuries arising out of or in the course of her employment. She also alleges that genuine issues of material fact exist as to whether or not the YES Center is a joint operation established pursuant to Iowa Code Ch. 28E and therefore whether all eleven counties are her "employers." Each of these employers, Chester alleges, has more than fifteen employees.

Complaint, p. 2–4. In her brief in resistance to Geringer's motion for summary judgment, Chester makes these further allegations of outrageous conduct:
> c. Defendant Geringer's request that the plaintiff explain to him how she might be able to have sexual intercourse with her husband when she is pregnant.
>
> * * * * * *
>
> h. Defendant Geringer's frequent comments to female staff that "it must be that time of the month" whenever a female staff [sic] took their [sic] purse to the restroom.
> i. Defendant Geringer's comments to plaintiff that the act of putting lips on a cigarette, or smoking a cigarette, was similar to acts of oral sex.
>
> * * * * * *
>
> m. Defendant Geringer's reference to the plaintiff as a "fucking bitch."
>
> * * * * * *
>
> o. Defendant Geringer's references to a picture displayed in his Y.E.S. Center office depicting two small boys on a walk and describing it as "my two little gay friends . . . one is going off to molest the other."
> p. Further acts as described in plaintiff's grievance received by defendant Geringer October 8, 1991, and supplemental grievances filed by the plaintiff received by defendant Geringer October 16, 1991.
> q. Defendant Geringer's recommendation to the Yes Center Executive Board that the plaintiff' [sic] employment be terminated, said recommendation being made less than 12 hours after Geringer received Plaintiff's Grievance, Deposition Exhibit 4.

Plaintiff's Brief in Resistance to Defendant Geringer's Motion To Dismiss, at pp. 5–7.

## IV. LEGAL ANALYSIS

### A. The Intentional Infliction Of Emotional Distress Claim

Both Geringer and the YES Center seek summary judgment on Chester's claim of intentional infliction of emotional distress. Both challenge the claim on the ground that, as a matter of law, the Iowa Civil Rights Act, Iowa Code § 216.16, provides the exclusive remedy for the conduct alleged. Geringer also challenges the claim on the ground that it fails to state a claim upon which relief can be granted because, even if true, Chester's allegations do not meet the Iowa Supreme Court's requirements for either outrageous conduct or severe emotional distress. Geringer's final challenge to the claim is that it is barred by the exclusive remedy provision of the Iowa Workers' Compensation Act, Iowa Code § 85.20.[5]

4. In her resistance to the motions for summary judgment, Chester alleges symptoms including anxiety attacks, headaches, difficulty in sleeping, nightmares, loss of self-esteem, loss of trust in males, crying, marital stress, depression, weight gain, loss of appetite, irritability, withdrawal from her children, husband, and social activities, and diagnosis of a condition described as a major depressive episode, single, moderate to severe, and panic disorder without agoraphobia, and symptoms of post traumatic stress disorder. Plaintiff's Brief in Resistance to Defendant Geringer's Motion For Summary Judgment, at p. 9. The diagnosis was made by Dr. Dena Olwan who read Chester's deposition, read a journal Chester kept which allegedly details her daily harassment by Geringer during her employment at the YES Center, and examined Chester briefly prior to her deposition as an expert witness in this matter. Deposition of Dr. Olwan, pp. 42–48, 56–57, 68–69, Appendix to Plaintiff's Statement of Material Facts.

5. The court will not reach this argument because it finds that the claim is disposed of on other grounds. However, the court notes that the argument that the intentional infliction of emotional distress claim is barred by the exclusivity provisions of the workers compensation act appears to be a matter of first impression for Iowa courts. Other jurisdictions have held that a claim of intentional infliction of emotion distress by a co-employee was not barred by the state's workers compensation act on one of several grounds. Some courts have found that their state's workers compensation act limited its coverage to "accidents," and intentional infliction of emotional distress was not accidental. See, e.g., Ford v. Revlon, Inc., 153 Ariz. 38, 734 P.2d 580 (1987) (defendants' acts were not "accidents" covered by the statute, therefore the injured em-

### 1. Elements Of The Tort

■ The elements for recovery on the common law tort of intentional infliction of emotional distress in Iowa are:

(1) outrageous conduct by the defendant;

(2) the defendant's intentional causing, or reckless disregard of the probability of causing emotional distress;

(3) plaintiff suffered severe or extreme emotional distress;

(4) actual and proximate cause of the emotional distress by the defendant's conduct.

*Cutler v. Klass, Whicher & Mishne,* 473 N.W.2d 178, 183 (Iowa 1991) (citing *Vaughn v. Ag Processing, Inc.,* 459 N.W.2d 627, 635–36 (Iowa 1990), and *Vinson v. Linn–Mar Community Sch. Dist.,* 360 N.W.2d 108, 118 (Iowa 1984)). In the present case, Geringer and the YES Center argue that Chester's claim of intentional infliction of emotional distress is only cognizable as a claim under the Iowa Civil Rights Act, because Chester's allegations of outrageous conduct for the common law tort are also her allegations of sexual discrimination, for which the exclusive remedy is found in Iowa Code Ch. 216. The court will therefore consider first whether Chester can make a sufficient showing of the elements for recovery on the tort, then consider whether the remedies provided by the Iowa Civil Rights Act are Chester's exclusive remedies for her claim of intentional infliction of emotional distress.

### 2. The Outrageousness Of Defendants' Conduct

■ The Iowa Supreme Court has said that when plaintiff brings a claim of intentional infliction of emotional distress, "it is for the court to determine in the first instance, as a matter of law, whether the conduct complained of may reasonably be regarded as outrageous." *Cutler v. Klass, Whicher & Mishne,* 473 N.W.2d 178, 183 (Iowa 1991); *Mills v. Guthrie County Rural Elec.,* 454 N.W.2d 846, 849 (Iowa 1990); *M.H. by and through Callahan v. State,* 385 N.W.2d 533, 540 (Iowa 1986); *Reihmann v. Foerstner,* 375 N.W.2d 677, 681 (Iowa 1985); *Vinson v. Linn–Mar Community School Dist.,* 360 N.W.2d 108, 118 (Iowa 1984); *Roalson v. Chaney,* 334 N.W.2d 754, 756 (Iowa 1983). The Iowa Supreme Court has required an extreme of egregiousness to elevate (or downgrade) mere bad conduct to the level of outrageousness. *Northrup v. Farmland Indus., Inc.,* 372 N.W.2d 193, 198 (Iowa 1985). For conduct to be outrageous, it must be "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Cutler,* 473 N.W.2d at 183 (citing *Vaughn,* 459 N.W.2d at 636); *Engstrom v. State,* 461 N.W.2d 309, 320 (Iowa 1990) (quoting *Vinson,* 360 N.W.2d at 118); *Harsha v. State Sav. Bank,* 346 N.W.2d 791, 801 (Iowa 1984) (quoting Restatement (Second) of Torts § 46 comment d (1965)). Indeed, the Iowa court has said that

[t]he tort law should encourage a certain level of emotional toughness. "The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind." Restatement (Second) of Torts § 46, comment d, *supra.* "Against a large part of the frictions and irritations and clashing of temperaments incident to participation in a community

ployee could enforce common-law liability against his or her employer because it was not encompassed by the statute). Others find no bar because allowing the workers compensation act to act as a shield to such wrong-doing would not further the public policy interests the act was intended to meet, *See, e.g., Fermino v. Fedco, Inc.,* 7 Cal.4th 701, 30 Cal.Rptr.2d 18, 872 P.2d 559 (1994) (defendant's conduct was the result of "stepping outside its role" as an employer and was therefore not part of the compensation bargain). Still others hold that workers compensation acts are no bar to claims of intentional infliction of emotional distress by a co-employee because the tort did not arise out of or was not in the course of the claimant's employment. *See, e.g., Popovich v. Irlando,* 811 P.2d 379 (Colo. 1991) (the rule of co-employee immunity does not extend to a co-employee's intentional tort when the *tortious conduct did not arise out of* and in the course of the tortfeasor's employment, even though the injury to the victim might have occurred within the scope of the victim's employment).

life, a certain toughening of the mental hide is a better protection than the law could ever be." Magruder, Mental and Emotional Disturbance in the Law of Torts, 49 Harv.L.Rev. 1033, 1035 (1936). *Northrup*, 372 N.W.2d at 198–99 (quoting *Meyer v. Nottger*, 241 N.W.2d 911, 918 (Iowa 1976)). Peculiar susceptibility, by reason of physical or mental condition of the person affected, is a factor in considering whether conduct is outrageous, although "major outrage" is always the crucial element of the tort. *Cutler*, 473 N.W.2d at 183 (quoting Restatement (Second) of Torts § 46, comment f). In *Northrup*, the court quoted extensively from the Restatement (Second) of Torts § 46, comment d, for a statement of the level of bad conduct necessary to be held to be outrageous:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.
>
> Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

*Northrup*, 372 N.W.2d at 198. Iowa courts have held, as the Restatement suggests, that it is not even sufficient that the conduct in question would have entitled the plaintiff to punitive damages. *Mills*, 454 N.W.2d at 850 (citing *Vinson*, 360 N.W.2d at 118).

It is a simpler matter to discover what kinds of behavior the Iowa Supreme Court has held insufficiently outrageous to sustain the tort than it is to find out what kind of behavior is sufficiently egregious. *See, e.g., Cutler*, 473 N.W.2d at 183 (letter advising partner who had suffered from a period of mental illness that he could not return to law practice without further review by partners was not extremely outrageous and did not generate a genuine issue of material fact on the claim); *Engstrom*, 461 N.W.2d at 320 (negligent failure to search for plaintiffs' adopted daughter's natural father before placing her in plaintiffs' home, and telling adoptive parents the father was dead without verifying his death, were not outrageous); *Kirk v. Farm & City Ins. Co.*, 457 N.W.2d 906, 911 (Iowa 1990) (insurance company's refusal to pay the full amount of uninsured coverage not outrageous); *Mills*, 454 N.W.2d at 849 (rural electric cooperative's conduct in using split bolt connectors instead of compression connectors to connect grounding jumper wire to main neutral line, in failing to discover dangerous situation that such omission presented, and in conducting settlement negotiations through insurance carrier with cooperative customers who sustained fire damage was not sufficiently outrageous); *Tomash v. Deere Indus. Equip. Co.*, 399 N.W.2d 387, 392–93 (Iowa 1987) (bringing of criminal charges was reasonably appropriate and therefore not outrageous); *Reihmann*, 375 N.W.2d at 681 (claim of improperly exerting influence to transfer employee was too speculative, and transfer of employee after complaints from customers was not outrageous); *Northrup*, 372 N.W.2d at 198–99 (firing for alcoholism not outrageous in light of extensive responsibilities of plaintiff); *Bossuyt v. Osage Farmers Nat. Bank*, 360 N.W.2d 769, 777 (Iowa 1985) (bank's refusal to pay own cashier's check not outrageous); *Vinson*, 360 N.W.2d at 119 (deliberate campaign to badger and harass employee not outrageous although "petty and wrong, even malicious"); *Harsha v. State Sav. Bank*, 346 N.W.2d 791, 801 (Iowa 1984) (banker's refusal to extend credit causing creditor to default on other obligations not sufficiently outrageous to support jury verdict on emotional distress claim); *Roalson v. Chaney*, 334 N.W.2d 754, 756 (Iowa 1983) (offer to marry made to woman still married and intended for her was not outrageous conduct as to woman's husband, even if it showed poor judgment); *Action Real Estate Corp. v. Bulechek*, 309 N.W.2d 502, 505 (Iowa 1981) (refusal to pay commission on sale of land not outrageous); *Amsden v. Grinnell Mut. Rein-*

*surance Co.*, 203 N.W.2d 252, 255 (Iowa 1972) (refusal to pay fire insurance benefits during period of arson investigation to insured suspected of arson by authorities not outrageous). Few cases can be located where an Iowa court actually held the conduct alleged was sufficiently outrageous. *See, e.g., Blong v. Snyder*, 361 N.W.2d 312, 315–17 (Iowa App.1984) (supervisors' excessive and groundless harassment of employee sufficiently outrageous); *Randa v. U.S. Homes, Inc.*, 325 N.W.2d 905, 907–08 (Iowa App. 1982) (defective construction of home and filing of mechanic's lien so shocking as to support jury verdict for emotional distress).

■ Notwithstanding the reluctance of Iowa courts to find conduct sufficiently outrageous to support a claim of intentional infliction of emotional distress, the court believes that such conduct is presented here. The court believes that recitation of the facts presented here to an average member of the community would arouse his resentment against Geringer, and lead him to exclaim, "Outrageous!" *Northrup*, 372 N.W.2d at 198. The court finds that Geringer's conduct of which Chester complains was so frequent, continuous, obviously distasteful, vulgar, and obscene, and engaged in with such complete disregard for the appropriateness of the conduct or its offensiveness to others, and hence so shocking as to be "outrageous," and can only be regarded as atrocious, and utterly intolerable in a civilized community. *Id.*[6] Chester's acknowledgement that Geringer lacked awareness of the offensiveness of his conduct does not reduce its atrociousness as Geringer seems to argue; rather, it is this disregard for standards of a civilized community that is in part intolerable. Certainly, there can be no grounds offered for such harassment. *See Blong v. Snyder*, 361 N.W.2d 312, 315–17 (Iowa App.1984) (supervisors' excessive and groundless harassment of employee sufficiently outrageous).

### 3. Sufficiency Of Plaintiff's Emotional Distress

■ The court must, therefore, consider whether Chester has presented evidence that, if true, would be sufficient showing of emotional distress. The Iowa Supreme Court has established stringent standards for this element of the tort as well. In Iowa, "the law intervenes only where the distress inflicted is so severe that no reasonable [person] could be expected to endure it." *Tappe v. Iowa Methodist Medical Center*, 477 N.W.2d 396, 404 (Iowa 1991) (quoting *Bethards v. Shivvers, Inc.*, 355 N.W.2d 39, 44 (Iowa 1984), in turn quoting Restatement (Second) of Torts § 46, comment j (1965)). The plaintiff must prove more than the fact that he or she felt bad for a period of time. *Vaughn v. Ag Processing, Inc.*, 459 N.W.2d 627, 636 (Iowa 1990); *Steckelberg v. Randolph*, 448 N.W.2d 458, 461 (Iowa 1989); *Randa v. U.S. Homes, Inc.*, 325 N.W.2d 905, 908 (Iowa App.1982). Rather, the plaintiff must also put on proof of physical ailments that plagued him or her during the relevant period of time and medical evidence of the cause of these ailments. *Vaughn*, 459 N.W.2d at 636. In many cases where the Iowa Supreme Court has held that a fact question was engendered on the issue of emotional harm and causation, the court has relied on the testimony of physicians and psychiatrists. *Id.* (citing cases).

The Iowa Supreme Court has found a variety of symptoms and combination of symptoms inadequate to support a claim of emotional distress. *See, e.g., Tappe*, 477 N.W.2d at 404 (event "worst thing" that ever happened to plaintiff, followed by symptoms of feeling upset and confused fell far short of proof necessary to sustain a *prima facie* case); *Vaughn*, 459 N.W.2d at 636 (evidence that plaintiff was upset, grouchy, nervous, and that his sex life deteriorated not sufficient); *Bates v. Allied Mut. Ins. Co.*, 467 N.W.2d 255, 261 (Iowa 1991) (evidence that plaintiff was so angry he felt physical pain, was sleepless, could only think about the event, felt cheated by the legal system and did not trust lawyers or anyone else, was haunted by fears that occupied his waking moments, interrupted his sleep, and prevent-

---

**6.** Of course, Chester's factual allegations of sexual harassment are, for purposes of this summary judgment proceeding, viewed in the light most favorable to Chester. *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356.

ed him from enjoying life was insufficient); *Bethards v. Shivvers, Inc.*, 355 N.W.2d 39, 44–45 (Iowa 1984) (one plaintiff "quivered" when the subject came up, the other worried about what other people thought, but such evidence was insufficient); *Harsha v. State Sav. Bank*, 346 N.W.2d 791, 801 (Iowa 1984) (plaintiff was depressed, not interested in life, and downhearted, but such evidence was insufficient); *Poulsen v. Russell*, 300 N.W.2d 289, 297 (Iowa 1981) (plaintiff's evidence that he was "very, very down," felt "super badly," was disappointed, and believed he had lost everything for a month or two was insufficient).

In contrast, cases in which the Iowa courts have found evidence of sufficient emotional harm have had direct evidence of either physical symptoms of the distress or a clear showing of a notably distressful mental reaction caused by the outrageous conduct. *Steckelberg*, 448 N.W.2d at 462 (citing the following cases: *Meyer v. Nottger*, 241 N.W.2d 911, 915–16 (Iowa 1976) (plaintiff was nauseous, had difficulty breathing, and was hospitalized for acute heart spasm); *Northrup v. Miles Homes, Inc. of Iowa*, 204 N.W.2d 850, 855 (Iowa 1973) (plaintiff cried frequently, lost weight, and suffered abdominal cramps); *Randa v. U.S. Homes, Inc.*, 325 N.W.2d 905, 908 (Iowa App.1982) (plaintiff was hospitalized with a near nervous breakdown, fear, and shock)). *See also Wambsgans v. Price*, 274 N.W.2d 362, 366 (Iowa 1979) (although Supreme Court believed evidence of distress from loss of home was sufficient, jury had been improperly instructed and matter was remanded).

▆▆ Chester alleges symptoms including anxiety attacks, headaches, difficulty in sleeping, nightmares, loss of self-esteem, loss of trust in males, crying, marital stress, depression, weight gain, loss of appetite, irritability, withdrawal from her children, husband, and social activities, and diagnosis of a condition described as a major depressive episode, single, moderate to severe, and panic disorder without agoraphobia, and symptoms of post traumatic stress disorder. Chester has shown more than the fact that she felt bad for a period of time. *Vaughn v. Ag Processing, Inc.*, 459 N.W.2d 627, 636 (Iowa 1990); *Steckelberg v. Randolph*, 448 N.W.2d 458, 461 (Iowa 1989); *Randa v. U.S. Homes, Inc.*, 325 N.W.2d 905, 908 (Iowa App. 1982). Rather, she has put on proof of physical ailments that plagued her during the relevant period of time and medical evidence, from Dr. Olwan's deposition, of the cause of these ailments. *Vaughn*, 459 N.W.2d at 636. Although it is a close question, the court concludes that Chester's claim of emotional distress falls within the ambit of those cases where the Iowa Supreme Court has held that a fact question was engendered on the issue of emotional harm and causation, because the court is able to rely on the testimony of a physician or psychiatrist that Chester's physical ailments were caused by Geringer's conduct. *Id.* The court concludes that unless Iowa Code Ch. 216 is the exclusive remedy for the conduct underlying Chester's claim of intentional infliction of emotional distress, Chester would be able to pursue her tort claim.

### 4. Preemption By The Iowa Civil Rights Act [7]

▆▆ Iowa Code Chapter 216 (1993), formerly Iowa Code Chapter 601A (1991),

---

7. In the cases cited herein, the Iowa Supreme Court has consistently described the effect of Chapter 216 on other claims arising out of discrimination as "preemption." However, the court believes that Chapter 216 actually provides the "exclusive remedy" for such claims, Iowa Code § 216.16(1), rather than "preempting" any claims. "Preemption" has traditionally referred to situations in which federal law displaces state law, or the law of one level of government displaces the law of another:

Under the Supremacy Clause, U.S. Const., Art. VI, cl. 2, state laws that "interfere with, or are contrary to the laws of congress, made in pur-

suance of the constitution" are invalid. The ways in which federal law may pre-empt state law are well established.... Congress' intent to supplant state authority in a particular field may be expressed in the terms of the statute. Absent explicit pre-emptive language, Congress' intent to supersede state law in a given area may nonetheless be implicit if a scheme of federal regulation is "so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it," if "the Act of Congress ... touch[es] a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same sub-

established the Iowa Civil Rights Commission and provides statutory remedies for enforcement of basic civil rights. *Greenland v. Fairtron Corp.*, 500 N.W.2d 36, 37 (Iowa 1993). The Iowa Supreme Court has said that section 601A.16(1), now 216.16(1), renders the chapter's remedies exclusive and preemptive. *Greenland,* 500 N.W.2d at 37; *Grahek v. Voluntary Hosp. Coop. Ass'n of Iowa, Inc.,* 473 N.W.2d 31, 33 (Iowa 1991); *Northrup v. Farmland Indus., Inc.,* 372 N.W.2d 193, 197 (Iowa 1985). Preemption occurs unless the claims are separate and independent, and therefore incidental, causes of action. *Greenland,* 500 N.W.2d at 38; *Grahek,* 473 N.W.2d at 34; *Vaughn v. Ag Processing, Inc.,* 459 N.W.2d 627, 639 (Iowa 1990). The claims are not separate and independent when, under the facts of the case, success on the claim not brought under chapter 216 requires proof of discrimination. *Greenland,* 500 N.W.2d at 38.

▮ The Iowa Supreme Court has addressed the preemption issue in only a very few cases. The seminal case was *Northrup v. Farmland Indus., Inc.,* 372 N.W.2d 193 (Iowa 1991). In *Northrup,* the court held that then chapter 601A provided the exclusive remedy for alleged wrongful discharge for alcoholism and the plaintiff's independent common-law action for wrongful discharge could not be recognized. *Id.* at 197. However, the court went on to entertain the plaintiff's claim that his discharge for alcoholism constituted intentional infliction of emotional distress. *Id.* at 197–99. The court concluded that discharge of a plant superintendent

for alcoholism, when the superintendent has extensive responsibilities for plant operations, buying, production scheduling, maintenance, and plant safety, was not outrageous conduct, nor was general criticism of the superintendent's performance outrageous. *Id.* at 198.

The court clarified the holding in *Northrup* in *Hamilton v. First Baptist Eld. Housing,* 436 N.W.2d 336 (Iowa 1989). In *Hamilton,* the plaintiff alleged discharge of an at-will employee in violation of public policy, but the court found that her argument "basically boil[ed] down to an assertion of sex discrimination." *Hamilton,* 436 N.W.2d at 341. The court concluded that *Northrup* held that the civil rights statute preempts independent common law actions also premised on discrimination. *Id.* The court stated that

> [plaintiff] failed in her bid to prove sex discrimination. *Northrup* forbids her a second bite of the apple in the form of an independent common law action also premised on sex discrimination.

*Id.* at 341–42.[8] *See also Borschel v. City of Perry,* 512 N.W.2d 565, 567–68 (Iowa 1994) (civil rights statute preempts claim of wrongful discharge in violation of public policy when the claim is premised on discriminatory acts, citing *Hamilton* ). Similarly, in *Vaughn v. Ag Processing, Inc.,* 459 N.W.2d 627 (Iowa 1990), the court held that the trial court properly dismissed as preempted by the civil rights statute claims of wrongful discharge, unfair employment practices, and termination in bad faith and actual malice

---

ject," or if the goals "sought to be obtained" and the "obligations imposed" reveal a purpose to preclude state authority. *Wisconsin Public Intervenor v. Mortier,* 501 U.S. 597, 604–05, 111 S.Ct. 2476, 2481–82, 115 L.Ed.2d 532 (1991) (citations omitted). Thus, "where [state] law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress," federal preemption occurs. *John Hancock Mutual Life Ins. Co. v. Harris Trust & Sav. Bank,* —— U.S. ——, ——, 114 S.Ct. 517, 526, 126 L.Ed.2d 524 (1993) (citing *Silkwood v. Kerr–McGee Corp.,* 464 U.S. 238, 248, 104 S.Ct. 615, 621, 78 L.Ed.2d 443 (1984)). The situation here is not such a case of displacement of law among levels of government. Rather, it is one of determining which state law, statutory or common law, provides the exclusive remedy for alleged wrongs.

**8.** This court concludes that the distinction between the common-law claim in *Northrup* of wrongful discharge on the basis of alcoholism, held to be based on discrimination and therefore preempted by chapter 601A, and the claim of intentional infliction of emotional distress for discharge on the basis of alcoholism, not preempted by 601A, is because the plaintiff did not need to prove *discrimination* on the basis of alcoholism to mount the emotional distress claim. The *Northrup* court did not explain why the emotional distress claim was independently cognizable when the wrongful discharge claim was not even though both alleged that the employer's conduct was motivated by the plaintiff's alcoholism.

because all were based on religious discrimination. *Vaughn*, 459 N.W.2d at 639. The court also held that a claim based on violation of criminal statutes was preempted. *Id.* at 638. However, the court held that a claim of breach of contract was not preempted, because it was a separate and independent cause of action triable to a jury. *Id.* at 639.

In *Grahek v. Voluntary Hosp. Co-op,* 473 N.W.2d 31 (Iowa 1991), the court also held that a breach of contract claim was not preempted by the civil rights statute even when the plaintiff believed that he was fired because of his age because

> [plaintiff] need not prove it to be successful in his contract claim. In this count he is claiming that the employment contract was breached by his premature termination in violation of the terms of the alleged contract. The claim of age discrimination is only incidental to the separate and independent cause of action for breach of contract.

*Grahek,* 473 N.W.2d at 34. However, the court distinguished wrongful discharge claims based on at-will employment from the one encountered by the plaintiff alleging breach of an employment contract, noting that "in an at-will situation, either party may terminate the employment at any time for any reason except discrimination under chapter 601A or violation of public policy." *Id.* The court concluded that

> [s]ince in at-will employment situations involving allegations of discrimination the claim of wrongful discharge and the claim of discrimination are one and the same, Iowa Code section 601A.16 requires that the employee follow the procedures provided in that chapter.

*Id.* The court did find that the plaintiff's breach of implied covenant of good faith and fair dealing claims were preempted because

> the only act of bad faith which [plaintiff] alleges is age discrimination. Thus, as in at-will employment arrangements, the bad faith claim and the chapter 601A civil rights claim are the same. Therefore, chapter 601A preempts the tort claim.

*Id.* Claims of fraudulent and negligent misrepresentation, which were not based on un-

fair or discriminatory practices, but on earlier acts, were not preempted. *Id.* at 35.

Finally, in the case most nearly on point, the Iowa Supreme Court held that a claim of intentional infliction of emotional distress was preempted by chapter 601A because the plaintiff had to prove sexual discrimination to be successful in the emotional distress claim. *Greenland v. Fairtron Corp.,* 500 N.W.2d 36, 38 (Iowa 1993). The court held that the test is whether, in light of the pleadings, discrimination is made an element of the alternative claims. *Id.*

> We think the answer with regard to the emotional distress claim is yes, resulting in preemption. Discrimination through sexual harassment is the "outrageous conduct" [plaintiff] specifically alleges in her claim for intentional infliction of emotional distress. So under the facts she alleges, if she were to fail in her claim of discrimination, [plaintiff] would necessarily fail in her claim of intentional infliction of emotional distress. Stated otherwise, it is impossible for [plaintiff] to establish the emotional distress she alleges without first proving discrimination.

*Id.* The court also addressed the apparent inconsistency between this holding and the *Northrup* decision in which the court had entertained an emotional distress claim based on termination for alcoholism after concluding that the plaintiff had a viable claim under 601A for discrimination on the basis of alcoholism. *Northrup,* 372 N.W.2d at 197–99. The court in *Greenland* noted that contrary to the plaintiff's contentions, the decisions in *Vaughn* and *Northrup* did not implicitly allow separate claims for intentional infliction of emotional distress in conjunction with chapter 216 discrimination claims, because preemption of the emotional distress claims was never raised or considered in either appeal. *Greenland,* 500 N.W.2d at 38.

In the present case, the same facts alleged in support of Chester's claims of sexual harassment are incorporated in the claim of intentional infliction of emotional distress and Chester alleges that these discriminatory acts of Geringer and the YES Center constitute outrageous conduct. Complaint, Count

V. Therefore, under *Greenland,* the claim of intentional infliction of emotional distress predicated on these allegedly discriminatory acts is preempted by Chapter 216 of the Iowa Code. Chester seems to concede this in her resistance to the YES Center's motion for summary judgment, Plaintiff's Brief in Support of Resistance to Defendant Y.E.S. Center's Motion for Summary Judgment, at 2, but argues that the following allegations of outrageous conduct are not premised on discrimination:

> a. Plaintiff presenting a complaint for sexual harassment, among other complaints, and being terminated less than 12 hours later.
>
> b. Plaintiff presenting a claim for sexual harassment, among other complaints, and having the Yes Center make no investigation of the incident.

Plaintiff's Brief in Support of Resistance to Defendant Y.E.S. Center's Motion for Summary Judgment, at 3. Neither of these allegations appear in either the original or amended complaints. The court concludes that both of these allegations of outrageous conduct are cognizable as sexual discrimination. The first is a retaliation for filing a sexual discrimination grievance, and the second is failure to investigate a sexual discrimination grievance. Therefore, both would also be preempted by Chapter 216. The court concludes that Chester's claim of intentional infliction of emotional distress is preempted by the Iowa Civil Rights Act because it is impossible for Chester to establish the emotional distress she alleges without first proving discrimination. *See Greenland,* 500 N.W.2d at 38.

The court concludes that the Iowa Civil Rights Act provides Chester with her exclusive remedy for the conduct complained of here. Therefore, defendants are entitled to summary judgment on Chester's claim of intentional infliction of emotional distress.[9]

## B. Subject Matter Jurisdiction Over The Title VII Claims

In its motion for summary judgment, the YES Center argues that this court does not have subject matter jurisdiction over Chester's sex discrimination claims in Counts I and II under 42 U.S.C. § 2000e. The YES Center argues that it did not have sufficient employees while Chester was employed there to be an "employer" under 42 U.S.C. § 2000e(b), and thus this court lacks subject matter jurisdiction to entertain the Title VII claims. Chester argues that because of the § 28E agreement that established the YES Center, the "employer" in question here was not just the YES Center, but all eleven counties that created and ran the center. Chester argues that any one of these counties had the fifteen or more employees necessary to come within the jurisdiction of 42 U.S.C. § 2000e.

▆▆▆▆ In relevant part, Title VII defines "employer" as "a person ... who has fifteen or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, and any agent of such a person." 42 U.S.C. § 2000e(b); *Graves v. Women's Professional Rodeo Ass'n, Inc.,* 907 F.2d 71, 72 (8th Cir. 1990); *Jones v. Wesco Investments, Inc.,* 846 F.2d 1154, 1156 n. 5 (8th Cir.1988). "Person" is further defined as including "one or more individuals, governments, governmental agencies, political subdivisions, labor unions, partnerships, associations, corporations, legal representatives, mutual companies, joint-stock companies, trusts, unincorporated organizations, trustees in cases under Title 11, or receivers." 42 U.S.C. § 2000e(a). An individual qualifies as an "employer" under Title VII if he or she serves in a supervisory

---

9. Chester will, of course, be able to present evidence of her emotional distress and its cause in support of an award of damages for emotional distress should she prevail on another of her claims, and the proof of emotional distress necessary to support a damages claim is less than that required to sustain the independent tort of intentional infliction of emotional distress. *See, e.g., Oswald v. LeGrand,* 453 N.W.2d 634, 639 (Iowa 1990) (distinguishing between proof necessary for award of damages for emotional distress and proof of emotional distress to support separate tort claim of intentional infliction of emotional distress); *Nesler v. Fisher & Co., Inc.,* 452 N.W.2d 191, 199 (Iowa 1990) (same); *Niblo v. Parr Mfg., Inc.,* 445 N.W.2d 351, 357 (Iowa 1989) (same); *Dickerson v. Young,* 332 N.W.2d 93, 98 (Iowa 1983) (same); *Edmunds v. Mercy Hosp., Cedar Rapids,* 503 N.W.2d 877, 881 (Iowa App. 1993).

position and exercises significant control over the plaintiff's hiring, firing, or conditions of employment. *Sauers v. Salt Lake County,* 1 F.3d 1122, 1125 (10th Cir.1993); *Paroline v. Unisys Corp.,* 879 F.2d 100, 104 (4th Cir. 1989), *aff'd in pertinent part,* 900 F.2d 27 (4th Cir.1990) (en banc). Because of the remedial nature of Title VII, the definition of employer, like all other definitions in Title VII, should be given a liberal construction, but the court's interpretation cannot contradict the statutory definition. *Zimmerman v. North American Signal Co.,* 704 F.2d 347, 353 (7th Cir.1983); *Baker v. Stuart Broadcasting Co.,* 560 F.2d 389, 391 (8th Cir.1977).

■ Although it is plain in this case that the board of supervisors of the YES Center, drawn from the boards of supervisors of the eleven counties that created and ran the center, had the power to fire Chester, and therefore exercised the supervisory power of an employer, that fact alone does not entitle the court to count the employees of all of the counties to determine whether Chester's employer meets the numerosity requirement of § 2000e(b). The Eleventh Circuit Court of Appeals confronted a similar argument in *Rogero v. Noone,* 704 F.2d 518 (11th Cir. 1983). In *Rogero,* the plaintiff sued the Tax Collector of Putnam County, Florida, in his individual and official capacity for wrongful discharge because of pregnancy in violation of 42 U.S.C. § 2000e and 42 U.S.C. § 1983. *Rogero,* 704 F.2d at 519. The district court dismissed the case because the Tax Collector had fewer than fifteen employees and was therefore not an "employer" within the meaning of Title VII. *Id.* at 520. The plaintiff argued that the Tax Collector should be characterized as an agent of the county, and she should have been permitted to aggregate the total number of Putnam County employees to meet the numerosity requirement. *Id.* The county was not itself a party to the lawsuit. *Id.* The appellate court agreed that the case was properly dismissed:

> [T]he [plaintiff] insists that [the Tax Collector], as an agent, is a proper defendant, thereby precluding the necessity of suing the county as well. To support this contention, [plaintiff] relies heavily on *Owens v. Rush,* 636 F.2d 283 (10th Cir.1980). In

*Owens,* the court held that a sheriff who employed fewer than fifteen persons was an agent for the county and therefore an employer for Title VII purposes. The critical distinction between that case and [the] one before us is that in *Owens,* the plaintiff named not only the sheriff, but also the Board of County Commissioners and other political bodies as codefendants. Likewise, in *Vulcan Society v. Fire Department of White Plains,* 82 F.R.D. 379 (S.D.N.Y. 1979), which held a district fire commission an agent of the city for Title VII purposes, both entities were parties to the suit. By contrast, in *Aguilera v. Cook County Merit Board,* 21 F.E.P. 731 [1979 WL 49] (N.D.Ill.1979), the court did permit a Title VII suit against the county Police and Corrections Merit Board even though the county itself was not named in the complaint. That decision appears to be a minority view. The [plaintiff] has cited no binding precedent to support her position.

Taken as a whole, [plaintiff's] argument is logically inconsistent. She relies on the agency relationship for purposes of numerosity but denies it, in essence, with respect to liability. Despite the fact that jurisdiction depends on the "borrowed" manpower strength of the county, the [plaintiff] has failed to join it as a party and has thus deprived Putnam County of a chance to defend against potential liability. Either the county has a stake in the outcome of this law suit, or it does not. The [plaintiff] cannot have it both ways by insisting that Putnam County is indispensable for jurisdictional purposes, but unnecessary for a resolution of the merits.

Although the scope of Title VII should be liberally construed, Congress did place certain limits on the broad sweep of the Act. Had Congress meant to remove all restrictions, the statutory definition of "employer" would not have been limited to legal entities employing fifteen or more persons. We conclude that because the Tax Collector was not an employer within the meaning of the statute, the district court lacked jurisdiction to entertain the [plaintiff's] action.

*Id.* at 521 (footnotes omitted). Chester's situation and arguments are similar to the plaintiff's in *Rogero.* She has not named any of the counties, their boards of supervisors, or the YES Center's Board of Supervisors as defendants in this case, yet she seeks to aggregate the employees of the eleven counties to meet the numerosity requirements of Title VII. There is no genuine issue of material fact that the YES Center itself did not have sufficient employees during 1990 and 1991 to be an "employer" within the meaning of Title VII. If the court were to follow the rationale of *Rogero,* the court would have to conclude that it does not have subject matter jurisdiction over Chester's claims under 42 U.S.C. § 2000e.

Although the court finds the analysis of the *Rogero* court persuasive, the court believes it appropriate also to consider whether the relationship between the counties and the YES Center is analogous to that between certain parent and subsidiary businesses such that the employees of both the parents, the counties, and the subsidiary, the YES Center, should be counted for jurisdictional purposes under Title VII. Chester has argued that the 28E agreement here establishes the counties' control over and responsibility for the YES Center. Defendants have argued that the YES Center was an independent entity and therefore plaintiff's sole employer for jurisdictional purposes.

Courts have considered a number of factors to determine whether or not a particular parent corporation or related enterprise should be held liable for the acts of its subsidiary, and whether its employees should be counted for jurisdictional purposes under Title VII.

 Although the term "employer" as used in Title VII of the Civil Rights Act "was meant to be liberally construed," a parent and subsidiary cannot be found to "represent a single, integrated enterprise" in the absence of evidence of "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership of financial control." *Garcia v. Elf Atochem North Am.,* 28 F.3d 446, 450 (5th Cir.1994) (citing *Trevino v. Celanese Corp.,* 701 F.2d 397, 403–04 (5th Cir.1983); and *Armbruster v. Quinn,* 711 F.2d 1332 (6th Cir.1983)); *Frank v. U.S. West, Inc.,* 3 F.3d 1357, 1362 (10th Cir.1993) (adopting this test, citing *Evans v. McDonald's Corp.,* 936 F.2d 1087, 1089 (10th Cir.1991), but identifying three other tests to determine whether a parent corporation is liable for the acts of its subsidiary); *Harris v. Palmetto Tile, Inc.,* 835 F.Supp. 263, 266 (D.S.C.1993) (citing *Armbruster* ). This test is sometimes called the "integrated enterprise test." *Garcia,* 28 F.3d at 450. A related test employed by the Fourth Circuit acknowledged the factors listed above, but rejected a mechanical test, concluding only that the factors identified relevant evidentiary inquiries. *Johnson v. Flowers Indus., Inc.,* 814 F.2d 978, 981 (4th Cir.1987). That Circuit therefore held that two entities could not be considered a single employer unless (1) one entity controls the employment practices and decisions of the other, and (2) one entity dominates the operations of the other. *Johnson,* 814 F.2d at 981; *Harris,* 835 F.Supp. 263 at 267. Similarly, other courts have concluded that a party must exercise "a direct and significant degree of control over the complaining party's direct employer or the complaining party's 'work environment' " to be considered an employer within the meaning of Title VII. *Goyette v. DCA Advertising, Inc.,* 830 F.Supp. 737, 744 (S.D.N.Y.1993) (citing *People of the State of New York v. Holiday Inns,* No. 83–CV–564S, 1993 WL 30933, 62 Fair Emp.Prac.Cas. (BNA) 826 (W.D.N.Y.1993)).[10]

---

**10.** When there is no parent-subsidiary relationship, but two businesses are nonetheless significantly related by common ownership or control, courts confronted with the question of who is the employer of a particular employee have considered the "economic realities of the relationship and the degree of control the employer exercises over the alleged employee." *Rogers v. Sugar Tree Products, Inc.,* 7 F.3d 577, 581 (7th Cir.1993) (citing *Knight v. United Farm Bureau Mutual Ins. Co.,* 950 F.2d 377, 380 (7th Cir.1991)). The

factors identified in *Rogers* and *Knight* are (1) the extent of the employer's control and supervision over the worker, including directions on scheduling and performance of work, (2) the kind of occupation and nature of skill required, including whether skills are obtained in the workplace, (3) responsibility for the costs of operation, such as equipment, supplies, fees, licenses, workplace, and maintenance of operations, (4) method and form of payment and benefits, and (5) length of

In the present circumstances, not all of the factors identified above are applicable to the relationship between several counties and the multi-county facility they created to perform certain services. However, the court concludes that the central features of the inquiries described above, control of employment decisions and environment, and domination of operations, are relevant to the present inquiry. The court must therefore examine the role the counties play in the operations and employment decisions of the YES Center.

The parties agree that the YES Center is a multi-county facility operated pursuant to Iowa Code Ch. 232 and was established following an agreement among the counties pursuant to Iowa Code Ch. 28E to create a Northwest Iowa Multicounty Regional Juvenile Detention Center. Iowa Code § 28E.6 provides in pertinent part:

> 28E.6 If the agreement does not establish a separate legal entity to conduct the joint or cooperative undertaking, the agreement shall also include:
>
> 1. Provisions for an administrator or a joint board responsible for administering the joint or cooperative undertaking. In the case of a joint board, public agencies party to the agreement shall be represented.

Iowa Code § 28E.6. The agreement creating the YES Center established such a board rather than creating a separate legal entity. 28E Agreement, p. 2, Plaintiff's Exhibit 1 to Plaintiff's Resistance to YES Center's Motion for Summary Judgment. The 28E agreement created the board to implement the "N.W. Iowa Multicounty Regional Detention Juvenile Emergency Services Program" and specifically reposes in the board the following powers:

> "To employ personnel to carry out the intended project including but not necessarily limited to: designation of job description, salaries or wages, hiring, firing, and employee sanctions within the budget limitations intended to fund the project;

* * *

> To establish an executive committee of the 28E Board to handle routine supervision of the project's administration between meetings of the 28E Board.

28E Agreement, p. 2–3. Thus, the Board of the YES Center, and not the counties, exercises all control of employment decisions, including hiring and firing, for the Center and controls its operations. The court concludes that the counties do not fall within the range of affiliated entities whose employees could be counted to meet Title VII numerosity requirements. Only the YES Center's direct employees may be counted to meet those requirements. Because the YES Center does not have sufficient employees to fall within the definition of an employer under Title VII, this court does not have subject matter jurisdiction over Counts I and II of Chester's suit. Defendants are entitled to summary judgment on Counts I and II of Chester's complaint.

### C. Lack Of A Federal Question

The dismissal of Counts I and II leaves this case without a federal question upon which to base federal court jurisdiction. The court must therefore consider whether or not to retain jurisdiction over the pendant state law claims in Counts III, IV, and V.

■ Prior to enactment of the federal supplemental jurisdiction statute, 28 U.S.C. § 1367, in 1990, a federal court's authority to exercise pendant jurisdiction over a state law claim was a matter of discretion involving the weighing of several factors:

> In [*United Mine Workers v.*] *Gibbs*, [383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966),] the Court set out the basic principles which should be applied where federal and state claims are presented together. First, the federal claim must be substantial enough for the vesting of subject-matter jurisdiction. Second, the federal and state

---

job commitment and/or expectations. *Rogers,* 7 F.3d at 581. The court notes again the emphasis on control of the employment situation in this test. On the question of whether the two nominally separate business entities could be considered a "single employer" or "integrated enter-

prises" despite the lack of a parent-subsidiary relationship, the *Rogers* court applied the same four-factor test described in the body of this ruling as pertaining to the parent-subsidiary relationship. *Id.* at 582.

claims must present one constitutional "case." If they derive from a common nucleus of operative fact, and if aside from their federal or state character, they normally would be tried in one proceeding, this element is present. Third, even if the court has the power in a constitutional sense to hear the entire case, it need not do so, for "pendent jurisdiction is a doctrine of discretion, not of plaintiff's right." 383 U.S. at 726, 86 S.Ct. at 1139. The exercise of the court's discretion involves "considerations of judicial economy, convenience and fairness to litigants" and "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties." *Ibid.*

*Koke v. Stifel, Nicolaus & Co., Inc.,* 620 F.2d 1340, 1345–46 (8th Cir.1980); *see also Hess v. St. Joseph Police Pension Fund,* 788 F.2d 1344, 1346 (8th Cir.1986) (discretion to entertain state claims should be exercised when judicial economy, convenience, and fairness weigh in favor of adjudication of the state claims). The advantages of adjudication of state law claims with federal claims are realized when the claims require similar types of proof and there is no prejudice to the parties as the result of hearing both claims. *Hess,* 788 F.2d at 1347. Review of the court's exercise of pendent jurisdiction must be made "at every stage of the litigation." *Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) (citing the *Gibbs* factors). In the absence of an independent basis of jurisdiction, "when the federal claim drops out before trial, and a complete trial of the facts would be necessary to determine the state claim, the federal court should not proceed with such a trial." *Curtis v. Sears, Roebuck and Co.,* 754 F.2d 781, 785 (8th Cir.1985).

Most of the factors involved in the court's analysis of whether or not to exercise pendant jurisdiction stated above are retained and codified in the statute defining the supplemental jurisdiction of the federal courts:

[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a) (West Supp.1991). A court "may decline to exercise supplemental jurisdiction" if:

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c) (West Supp.1991). Where the case clearly fits within one of the subsections listed above, the court may decline to exercise supplemental jurisdiction. *Packett v. Stenberg,* 969 F.2d 721, 726–27 (8th Cir.1992). *See also O'Connor v. State of Nev.,* 27 F.3d 357, 362 (9th Cir.1994); *Growth Horizons, Inc. v. Delaware County,* 983 F.2d 1277, 1285 n. 14 (3d Cir.1993); *Chelsey v. Union Carbide Corp.,* 927 F.2d 60, 65–66, n. 3 (2nd Cir.1991); *Carroll v. Borough of State College,* 854 F.Supp. 1184, 1200 (M.D.Pa. 1994).

■ In the present case, the court has dismissed all claims over which it has original jurisdiction—the Title VII claims. Furthermore, the state law claims that remain, although not particularly unusual or complex, do require the application of case law that has grown up around specific state statutes, Iowa Code Ch. 216 and Iowa Code § 79.29. This federal court does not believe it is appropriate or necessary for the federal court to adjudicate matters that are plainly within the purview and expertise of the state court where there is no independent federal jurisdiction. This matter will therefore be dismissed. Chester may refile her complaint in state court for adjudication of the remaining

state law claims pursuant to Iowa's "failure of action" statute.[11]

## V. THE MOTION TO DISMISS

The court concludes that disposition of the motions for summary judgment has effectively mooted Geringer's motion to dismiss Counts I and II, which were based on Title VII. Chester may not pursue those claims because the YES Center and Geringer are not employers within the meaning of Title VII. The motion to dismiss Count III is based on the timeliness with which Chester filed her Chapter 216 count against Geringer after receiving a "right to sue" letter. The court concludes that this issue is also well within the purview and expertise of the state court, so Geringer's motion to dismiss that count as to him will be denied without prejudice to its reassertion in any action in state court.

## VI. CONCLUSION

The court concludes that Geringer's and the YES Center's motions for summary judgment as to Count V are granted on the ground that Chester's claims in Count III under Iowa Code Ch. 216 provide Chester's exclusive remedy for the wrongs alleged in Count V. The court also concludes that the YES Center's motion for summary judgment as to Counts I and II is granted on the ground that the YES Center is not an employer within the meaning of Title VII because it does not have fifteen employees as required by § 2000e(b). The court therefore determines that there is no federal question

upon which to base federal subject matter jurisdiction and Chester's remaining claims under Iowa Code Ch. 216 and Iowa Code Ch. 79 are dismissed in favor of refiling such claims in state court pursuant to the Iowa "failure of action" statute, Iowa Code § 614.10. The court's disposition of the motions for summary judgment renders moot Geringer's motion to dismiss as to Counts I and II, and the court denies without prejudice Geringer's motion to dismiss Count III as that part of Geringer's motion to dismiss is better disposed of by the state court.

**IT IS SO ORDERED.**

---

11. Iowa Code § 614.10, Iowa's "failure of action" statute, provides as follows:

> If, after the commencement of an action, the plaintiff, for any cause except negligence in its prosecution, fails therein, and a new one is brought within six months thereafter, the second shall, for the purposes herein contemplated, be held a continuation of the first.

In order for a plaintiff's cause of action to come within section 614.10, there are four requirements:

1. The failure of a former action not caused by plaintiff's negligence.
2. The commencement of a new action brought within six months thereafter.
3. The parties must be the same.
4. The cause of action must be the same. *Beilke v. Droz,* 675 F.2d 194, 195 (8th Cir.1982) (citing *Hartz v. Brunson,* 231 Iowa 872, 2 N.W.2d 280, 283 (Iowa 1942)). In *Beilke,* the U.S. District Court for the Eastern District of Wisconsin

had dismissed a lawsuit against the insurer on the ground that the insurer may not be sued directly under a Wisconsin statute. *Id.* The suit was refiled in federal court in Iowa, and the court determined that Iowa Code § 614.10 would permit the action to go forward if the insured and the insurer were the "same party" within the meaning of the statute. *Id.* The Eighth Circuit Court of Appeals certified to the Iowa Supreme Court the question of whether an insured and its insurance company were "the same" within the meaning of the statute. *Id.* The Iowa Supreme Court answered in the affirmative. *Id.* In the present case, the court sees no reason why Chester could not meet the requirements of the Iowa "failure of action" statute to refile her Chapter 216 and Chapter 79 claims in Iowa district court even if they would otherwise be time barred because they were timely filed in federal court and have been dismissed through no fault of Chester's.