August J. RANDA and Helen C. Randa,
Plaintiffs/Cross-Appellees,

v.

U.S. HOMES, INCORPORATED,
Defendant/Cross-Appellant/Third-Party
Plaintiff/Appellee,

v.

U.S. PLYWOOD–CHAMPION PAPERS,
INCORPORATED, Third-Party
Defendant/Appellant.

No. 2–66542.

Court of Appeals of Iowa.

Aug. 26, 1982.

Stephen D. Hardy of Grefe & Sidney, Des Moines, for third-party defendant-appellant U.S. Plywood.

Lorna Williams, Harold Leener and Joseph A. Billings, Des Moines, for defendant/cross-appellant third-party plaintiff/appellee U.S. Homes.

Theodore T. Duffield of Patterson, Lorentzen, Duffield, Timmons, Irish & Becker, Des Moines, for plaintiffs/cross-appellees.

JOHNSON, Judge.

Defendant, U.S. Homes, Inc., appeals from a judgment for plaintiffs, August and Helen Randa, in this suit to recover damages for defective workmanship and materials in the construction of plaintiffs' house. Defendant to cross-petition, U.S. Plywood, cross-appeals from a judgment in favor of defendant granting indemnity for part of the verdict. Defendant claims that the trial court erred in denying its motion for directed verdict because of the following reasons: 1) that plaintiffs failed to plead an action in tort for intentional infliction of emotional distress; 2) that plaintiffs failed to prove by substantial evidence the elements of intentional infliction of emotional distress; 3) that compensatory damages for emotional distress are not recoverable for breach of a "normal commercial contract"; and 4) that the cost to repair any defective workmanship was unpled and unproved. Defendant also asserts that the trial court erred in failing to grant its motion for a new trial based upon an allegedly improper measure of damages and an allegedly exces-

sive verdict.[1] We affirm in part and reverse in part.

Plaintiffs contracted with defendant, generally a manufacturer of pre-built homes, for construction of an expensive custom-built home in the Southern Hills area of Des Moines. After plaintiffs moved in, they discovered numerous defects, including leaks that damaged the interior and warped the walls. Defendant came out to the house many times in an effort to solve the problems, but there was evidence that these efforts were nearly as incompetent as the original construction allegedly was. In the first spring after the house was completed, the exterior cedar plywood siding was attacked by woodpeckers. The woodpeckers drilled numerous holes in the siding, leaving it unsightly and vulnerable to the weather.

Plaintiffs initiated this litigation by filing a petition on August 15, 1978, in which they claimed that defendant was negligent in failing to provide qualified workers and in using defective building materials. They also sought damages for mental anguish and emotional distress as a result of defendant's negligence. Defendant's answer denied all pertinent parts of plaintiffs' petition. On March 28, 1980, plaintiffs were permitted to file an amended petition wherein they sought damages for defendant's alleged breach of warranty, as well as damages arising from defendant's filing of a mechanics lien. On September 8, 1980, defendant filed its cross-petition against third-party defendant, U.S. Plywood, seeking indemnification on the basis of U.S. Plywood's breach of an implied warranty of merchantability on the siding applied to plaintiffs' home by defendant. Third-party defendant answered and denied all pertinent allegations.

The case was tried to a jury, which returned a verdict for plaintiffs allowing $14,878.31 compensatory damages for the construction defects and $15,000.00 compensatory damages for mental distress. A claim for punitive damages was denied. The jury returned an interrogatory stating that defendant had proved its merchantability cross-claim against U.S. Plywood and setting damages at $5,220.40. The court entered judgment for plaintiffs in the amount of $29,878.31 and for defendant on the indemnity claim for $5,220.40.

**I. Scope of Review.** Since this is an action at law, our review is on assigned error only. Iowa R.App.P. 4.

**II. Propriety of Trial Court's Ruling on Defendant's Motion for Directed Verdict.** This court's review is limited to grounds asserted at the trial court. "[A] party is not entitled to urge for the first time on appeal as an assignment of error an issue not raised and not properly preserved for review in the trial court...." *Wiles v. Myerly,* 210 N.W.2d 619, 626 (Iowa 1973). Accordingly, our review is limited to the grounds urged by defendant in its motion for directed verdict. *See Meeker v. City of Clinton,* 259 N.W.2d 822, 828 (Iowa 1977).

**A. Emotional Distress.** In Division IV of their petition, plaintiffs sought damages for "emotional distress, mental anguish ...." Defendant asserts in its brief that plaintiffs failed to plead the words "outrageous" or "severe" in conjunction with defendant's conduct and thus did not properly plead the tort of intentional infliction of emotional distress. We do not reach the merits of defendant's contention, in the context of notice pleading, because we find defendant failed to preserve error. Defendant did not file any pretrial motion attacking the sufficiency of plaintiffs' pleadings, did not object on this basis to the introduction of evidence, and attacked only the sufficiency of plaintiffs' proof to establish the tort of intentional infliction of emotional distress in its motions for directed verdict and new trial. On this record, defendant has preserved nothing for our review.

Defendant's next contention is that plaintiffs failed to prove by substantial

---

1. Defendant, in the alternative, sought a remittitur.

evidence the elements of intentional infliction of emotional distress. We find this issue to be properly preserved. In assessing the propriety of the trial court's ruling the reviewing court must view the evidence in a light most favorable to the nonmoving party, here plaintiffs. *See Poulsen v. Russell,* 300 N.W.2d 289, 294 (Iowa 1981). In determining whether the evidence was sufficient to justify the submission of the issue to the jury, we must view the evidence "in accordance with the same principles required for review by the trial court". *Meeker,* 259 N.W.2d at 828.

■ The tort of intentional infliction of emotional distress includes the following elements: "(1) Outrageous conduct by the defendant; (2) the defendant's intention of causing, or reckless disregard of the probability of causing emotional distress; (3) the plaintiff's suffering severe emotional distress; and (4) actual and proximate causation of the emotional distress by the defendant's outrageous conduct". *Amsden v. Grinnell Mutual Reinsurance Co.,* 203 N.W.2d 252, 255 (Iowa 1972). In examining the elements of emotional distress the supreme court in *Poulsen* concluded:

> Emotional Distress 'includes all highly unpleasant mental reactions.' Restatement (Second) of Torts § 46, Comment j. It is only when it is extreme or severe that it is compensable. *Id.* Our prior cases have not extensively discussed this element to decide when a prima facie case has been established. The distress does not have to manifest itself physically. *Meyer,* 241 N.W.2d at 918; Restatement (Second) of Torts § 46, Comment k. In some cases outrageousness of the defendant's conduct may be enough evidence that the distress is severe. Restatement (Second) of Torts § 46, Comment j.

300 N.W.2d at 297. The plaintiffs must establish more than the fact that they felt bad for a period of time. *See Meyer v. Nottger,* 241 N.W.2d 911, 915–16 (Iowa 1976) (jury question generated where plain-

tiff was nauseous, had difficulty breathing and suffered acute myocardial ischemia); *Northrup v. Miles Homes, Inc.,* 204 N.W.2d 850, 855 (Iowa 1973) (jury question generated where plaintiff cried, lost weight and suffered abdominal cramps).

■ In an effort to support their claim, plaintiffs produced evidence revealing that they had a contract with defendant to build a $160,000-plus custom home. Plaintiffs further presented evidence that the roof leaked, the doors warped, woodpeckers attacked the wood siding, the walls were crooked and a cement driveway was improperly laid. Added to this was testimony of Mr. Randa that Mrs. Randa "spent some time in the hospital. I mean she nearly had a nervous breakdown over it because, you know, we buy a new home, you expect to move in it." (Appendix at 94.) There was further testimony that when Mrs. Randa was told she could not put mirrors on the bathroom walls she was just "petrified." Finally, plaintiffs testified that the filing of the mechanics lien was a "shock" to them and that Mrs. Randa got "sick" and "started crying" about the lien. (Appendix at 112.)

While this court agrees with the statement that "[f]or most members of the community, especially those engaged in life in the commercial world, 'a certain toughening of the mental hide is better protection than the law could ever be . . .[,]' " *Poulsen,* 300 N.W.2d at 297, we believe there is substantial evidence that plaintiffs suffered severe or extreme emotional distress proximately caused by defendant's conduct. Accordingly, trial court did not err in submitting this issue to the jury. In light of this conclusion, we need not address defendant's assignment of error that compensatory damages for emotional distress are not recoverable for a breach of a "normal commercial contract."

■ **B. Cost to Repair.** Defendant's next assignment of error is that the trial court erred in overruling its motion for a

directed verdict "pertaining to unpled and unproved costs to repair and defective workmanship and materials." Objections to evidence must ordinarily be made at the earliest possible time. *See Ver Steegh v. Flaugh,* 251 Iowa 1011, 1017, 103 N.W.2d 718, 722 (1960). In this case, defendant did not object to the introduction of evidence of plaintiffs' cost of repair but rather waited until the close of plaintiffs' evidence to make a motion for a directed verdict.

■ Additionally, defendant's motion for a directed verdict, with regard to the damages, was that "plaintiffs have failed to prove a prima facie case and have not introduced sufficient evidence in support of their claim that they sustained damages in the sum of $24,864.00". The particular grounds for such a claim should have been specifically pointed out so as to advise the court and opposing counsel of such grounds for the motion. *See Jensvold v. Chicago Great Western R. Co.,* 236 Iowa 708, 714, 18 N.W.2d 616, 619 (1945). We therefore conclude that defendant's failure to raise a timely objection to the introduction of allegedly objectionable evidence, coupled with its failure specifically to articulate such grounds at the time of the motion for a directed verdict, preserves no assignment of error on this issue.

### III. Propriety of Trial Court's Ruling Denying Defendant's Motion for a New Trial.

■ **A. Diminution of Value.** Defendant alleges that the court improperly instructed the jury that it could consider the diminution in the value of the house as discussed in *Busker v. Sokolowski,* 203 N.W.2d 301 (Iowa 1972). The court in *Busker* suggested that the "reduction in value" rather than the "cost" rule could be appropriate where there would be unreasonable economic waste. *Id.* at 304. However, where there are no timely objections to the instructions, this court will refuse to consider them on appeal. *See Tarrell v. Erdmann,* 221 N.W.2d 504, 507 (Iowa 1974).

Since defendant made no objections to the instructions about which it now complains, the instructions stand as the law of the case. *See Knudsen v. Merle Hay Plaza, Inc.,* 160 N.W.2d 279, 281 (Iowa 1968). Accordingly, we conclude that defendant has failed to preserve any assignment of error on this issue.

■ **B. Excessiveness of the Verdict.** Defendant further claims that its motion for new trial and remittitur should have been granted because the verdict is excessive. We disagree.

Defendant's claim in this regard essentially restates allegations which we have found unpersuasive in other divisions of this opinion. We note that the compensation awarded to plaintiffs for repair of defects and diminution of value was less than the maximum amount that the jury could have found from the evidence. Also, the award for emotional distress was substantially less than plaintiffs' prayed-for damages. In light of this posture of the case, we find no basis for concluding that the verdict should be set aside. *See Allen v. Lindeman,* 259 Iowa 1384, 1398, 148 N.W.2d 610, 619 (1967).

### IV. The Propriety of the Trial Court's Ruling on Third-Party Defendant's Motion for Directed Verdict.
Third-party defendant, U.S. Plywood, claims the trial court erred in denying its motion for a directed verdict on defendant's indemnity claim for defective plywood siding. We will address the specific allegations below.

■ **A. Notice of Breach.** U.S. Plywood asserts that defendant failed properly to plead and prove notice of an alleged breach of warranty of merchantability as required by Iowa Code § 554.2607(3) (1981). It has been held that "the giving of a notice must be pleaded as a condition precedent to recovery. *Winter v. Honeggers & Co., Inc.,* 215 N.W.2d 316, 327 (Iowa 1974). Iowa R.Civ.P. 98 governs the pleading of conditions precedent. *Id.* Given the most generous reading of defendant's cross-petition we find no pleading of notice. U.S. Plywood,

however, did not make any timely motion to dismiss based upon insufficiency of the pleadings, although it responded by means of an answer to the merits of defendant's cross-petition and denied that defendant had given notice to U.S. Plywood. Moreover, U.S. Plywood did not assert defendant's failure to plead notice in its motion for directed verdict, but rather attacked the sufficiency of the evidence of the notice. Accordingly, our review is limited to the grounds urged by U.S. Plywood in its motion for directed verdict. *See Meeker v. City of Clinton,* 259 N.W.2d at 828. We thus conclude that U.S. Plywood has waived any assignment of error based on defendant's failure to plead notice pursuant to section 554.2607.

■ We next view the evidence in a light most favorable to defendant, the non-moving party, to determine whether there was sufficient evidence that defendant gave notice to U.S. Plywood. *Poulsen,* 300 N.W.2d at 294. In this regard, U.S. Plywood made no objection when defendant's president, Robert Sandler, testified that he contacted U.S. Plywood in 1977 at its Omaha office by phone and letter and that later the Connecticut office of U.S. Plywood contacted him and sent a person out to inspect plaintiff's home. Sandler also testified that he contacted Plywood's legal department after plaintiffs had filed their petition. From this record, we find there was sufficient evidence to establish notice.

**B. Sufficiency of Evidence of Breach.** Defendant sought recovery against U.S. Plywood on the basis of a breach of an implied warranty of merchantability in providing the siding applied to plaintiffs' home. The jury returned a verdict in favor of defendant. The question for this court on appeal is whether, after viewing the evidence in a light most favorable to defendant, there is substantial evidence of a breach of an implied warranty of merchantability by U.S. Plywood. *See Poulsen,* 300 N.W.2d at 294. If so, we are bound by the jury's finding on this issue. *Id.*

For goods to be merchantable they must:

(a) pass without objection in the trade under the contract description; and

(b) in the case of fungible goods, are of fair average quality within the description; and

(c) are fit for the ordinary purposes for which such goods are used; and

(d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and

(e) are adequately contained, packaged and labeled as the agreement may require; and

(f) conform to the promises or affirmations of fact made on the container or label if any.

Iowa Code § 554.2314 (1981). The warranty of merchantability is "implied in the contract for their sale if the seller is a merchant with respect to goods of that kind". *Id.* In this case the only points of contention with regard to this section are subdivisions (a) and (c).

The evidence introduced at trial showed that U.S. Plywood sold vertical cedar plywood to defendant to be used as exterior siding, which was in turn sold to plaintiffs and installed on plaintiffs' home as exterior siding. Additionally, it is undisputed that woodpeckers "attacked" the siding after installation, although there is a question as to whether the woodpeckers did so to establish territory or to feed. Defendant's expert, architect John Bloodgood, testified on cross-examination that the plywood was not defective as manufactured, although he advises clients of potential problems with woodpeckers. Defendant also cites the testimony of plaintiffs' expert Bruce Griffith who testified that the siding was "not suitable" at the time he viewed it on the plaintiffs' home. He made no mention, nor was he examined, as to the manufacture of such siding. Additionally, there is ample evidence in the record that the siding was manufactured in conformance with applicable industrial standards. We, therefore, conclude that there was no substantial evi-

dence introduced at trial that the siding would not pass in trade without objection. However, the elements of merchantability are conjunctive.

We must also determine whether the siding was "fit for the ordinary purposes for which such goods are used." § 554.-2314(2)(c). In this regard, defendant produced evidence showing that plywood as manufactured is filled with holes called "core gaps" and that the surface layer of the plywood is grooved. Further, the evidence revealed that "core gaps" and grooves make it possible for insects to infiltrate the siding and that the siding placed on plaintiffs' home had insects in it several months after it was installed. Also shown was the fact that U.S. Plywood had some knowledge, prior to the sale of the siding to defendant, that "soft wood" exterior siding had been susceptible to woodpecker damage because of insects in the Iowa region.

At this point, we must distinguish the warranty of merchantability from the warranty of fitness for a particular purpose and the standard applicable to each.

A "particular purpose" differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question. For example, shoes are generally used for the purpose of walking upon ordinary ground, but a seller may know that a particular pair was selected to be used for climbing mountains.

Uniform Commercial Code Comment, comment 2, 35 I.C.A. § 554.2315. In this case the goods were "purported" to be exterior siding. Whether the goods furnished were "fit" could best be answered by defendant's own expert, who testified he continues using the same style of siding as that installed on plaintiffs' home.

Even viewing this evidence in a manner most favorable to defendant, we find no basis for concluding that it established any unfitness for the ordinary purposes for which plywood is used. While this evidence may lend support to a claim for a breach of warranty of fitness for a particular purpose, this theory of liability on the part of U.S. Plywood was not submitted to the jury. We, therefore, conclude that trial court erred in submitting the breach of warranty of merchantability issue to the jury.

Accordingly, we affirm the judgment rendered against the defendant on all points and reverse the judgment for indemnification against third-party U.S. Plywood.

AFFIRMED IN PART AND RE-VERSED IN PART.