# IN THE COURT OF APPEALS OF IOWA

No. 13-1560
Filed December 24, 2014

**TRUSTEES OF THE IOWA LABORERS DISTRICT COUNCIL HEALTH AND WELFARE TRUST; TRUSTEES OF THE LABORERS NATIONAL PENSION FUND; and TRUSTEES OF THE IOWA BUILDERS RETIREMENT FUND,**
    Plaintiffs,

**vs.**

**ANKENY COMMUNITY SCHOOL DISTRICT, BETTS & BEER CONSTRUCTION CO., INC., WESTERN SURETY COMPANY, GROVE MASONRY, INC., TWIN CITY CONCRETE PRODUCTS COMPANY, SIOUX CITY BRICK & TILE COMPANY, and OLDCASTLE APG., INC.,**
    Defendants.

_____

**OLDCASTLE APG WEST, INC. a/k/a RHINO MATERIALS**
    Defendant/Crossclaim Plaintiff-Appellant,

**v.**

**GROVE MASONRY, INC.,**
    Crossclaim Defendant-Appellee.
_____

Appeal from the Iowa District Court for Polk County, Rebecca Goodgame Ebinger, Judge.

Oldcastle APG West, Inc. ("Oldcastle") appeals from the district court's denial of its crossclaim for an amount owed under an open account with Grove Masonry, Inc. ("Grove Masonry"). It also appeals the district court's award of direct and consequential damages to Grove Masonry on its counterclaim against Oldcastle. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Mark Weinhardt, Holly Logan, and Danielle Shelton of Weinhardt & Logan, P.C., Des Moines, and Christopher Low of Abendroth & Russell, P.C., Urbandale, for appellant.

Matthew G. Sease of Kemp & Sease, Des Moines, for appellee.

Heard by Vogel, P.J., and Vaitheswaran and Potterfield, JJ.

**POTTERFIELD, J.**

Oldcastle APG West, Inc. ("Oldcastle") appeals from the district court's denial of its crossclaim for an amount owed under an open account with Grove Masonry, Inc. ("Grove Masonry"). It also appeals the district court's award of direct and consequential damages to Grove Masonry on its counterclaim against Oldcastle for defective product. We affirm in part, reverse in part, and remand for further proceedings.

### I. Factual and Procedural Background

Oldcastle is the parent company of Rhino Materials, which manufactures concrete masonry units (CMUs) used by masonry contractors like Grove Masonry in construction projects. In 2009, Ankeny Community School District began two building projects, a high school and a middle school. Grove Masonry won the bid to be mason on the two projects. It contracted with Oldcastle to provide the CMUs it would need to complete the work. The CMUs were to comply with the industry standard ASTM C90 guideline.[1]

After work began, Grove Masonry started to notice some of the blocks were defective. There were two types of defects it noticed. First, some of the blocks were pitted and chipped on their surfaces. This was a patent defect. These blocks are known as "shotgun blocks." Second, some of the blocks had a slight outward protrusion on their surfaces. This was a latent defect and was not

---

[1] The ASTM C90 specification states, "Minor cracks, incidental to the usual method of manufacture or minor chipping resulting from customary methods of handling in shipment and delivery, are not grounds for rejection. . . . Five percent of a shipment containing chips . . . or cracks . . . is permitted."

noticeable until the blocks had been installed. These blocks are known as "bubble blocks."

Sometime between January and May of 2010, Grove Masonry first noticed the defects. Shortly thereafter, it notified Oldcastle. Oldcastle came to the construction site to look at the product and troubleshoot with Grove Masonry. Some amount of both the shotgun block and the bubble block had been installed prior to Oldcastle's arrival on the scene.

Testimony at trial was inconsistent as to when precisely Grove Masonry noticed the defects. It was equally unclear as to when Grove Masonry notified Oldcastle of the defects. One of Grove Masonry's witnesses thought they first noticed the problem "probably around the first of the year, January, February . . . ." Another of its witnesses said that Oldcastle was on site within a few days of Grove Masonry noticing the defects, which "had to be in April, May, sometime in there." The problems with the defective blocks required very costly corrective measures, a cost which Grove Masonry bore. During this time it continued to receive and install multiple deliveries of additional CMUs from Oldcastle but stopped paying for the product.

The Ankeny schools project had been a pivotal one for Grove Masonry. After the trouble with the CMUs on the Ankeny projects, Grove Masonry fell into serious economic hardships, became unable to obtain bonding on its projects, struggled to win contracts, and has been left out of calls for bids in its area.

Oldcastle and Grove Masonry were co-defendants in an action initiated as a result of the expensive and troubled construction projects. Oldcastle filed a crossclaim for payment from Grove Masonry for the deliveries of CMUs for which

Grove Masonry still refused to pay. It filed two counts, the first of which was disposed of by summary judgment in Grove Masonry's favor. The second crossclaim alleged that Oldcastle held an open account in which Grove Masonry owed the agreed-upon amount for the CMUs it accepted, which amounted to $155,572.74. Before trial, Oldcastle moved to amend this second crossclaim to broaden its theories of recovery, but the district court denied the motion. Grove Masonry filed counterclaims against Oldcastle, alleging the CMUs delivered violated an implied warranty of merchantability and an implied warranty of fitness for a particular purpose.

The district court heard the case in equity in a bench trial. It found Oldcastle's relationship with Grove Masonry was not an open account and denied Oldcastle's claim for payment for the accepted CMUs. It also entered judgment in favor of Grove Masonry on the count of violation of the implied warranty of merchantability. The district court awarded Grove Masonry $783,096.68 in direct economic damages and $1,005,961.00 in consequential lost-profits damages. Oldcastle appeals.

## II. Standard and Scope of Review

We review the district court's rulings on contract matters for errors at law. Iowa R. App. P. 6.907. When we review for errors at law, "[w]e are bound by the trial court's findings of fact if they are supported by substantial evidence." *Harrington v. Univ. of N. Iowa*, 726 N.W.2d 363, 365 (Iowa 2007).

"'Substantial evidence' means the quantity and quality of evidence that would be deemed sufficient by a neutral, detached, and reasonable person, to establish the fact at issue when the consequences resulting from the

establishment of that fact are understood to be serious and of great importance." Iowa Code § 17A.19(10)(f)(1) (2013).

"In assessing the evidence, we view the record in the light most favorable to the prevailing party, indulging in all legitimate inferences that may fairly and reasonably be deduced from the evidence." *Pollmann v. Belle Plaine Livestock Auction, Inc.*, 567 N.W.2d 405, 409 (Iowa 1997).

The issues raised by Oldcastle on appeal concern Iowa's adoption of the Uniform Commercial Code (UCC), effective at the time of the transactions between Oldcastle and Grove Masonry. Iowa Code ch. 554 (2009). "[W]hen interpreting any provision of the Uniform Commercial Code, we bear in mind its overriding purposes and objectives," which include "the uniform application of commercial law among the states and the presumption in favor of predictability and finality of commercial transactions." *Husker News Co. v. Mahaska State Bank*, 460 N.W.2d 476, 477 (Iowa 1990). To achieve that goal, we may "look to the interpretation given by other jurisdictions." *Van Ness v. First State Bank of Ida Grove*, 430 N.W.2d 109, 110 (Iowa 1988).

### III. Notice of Breach in a Reasonable Time

"Where a tender has been accepted[,] the buyer must within a reasonable time after the buyer discovers or should have discovered any breach notify the seller of breach or be barred from any remedy[.]" Iowa Code § 554.2607(3)(a). Based on the statutory language, Oldcastle asserts Grove Masonry is barred from any remedy related to the defective CMUs. First, it argues Grove Masonry failed to plead in its cross-complaint that it provided Oldcastle notice of the defective CMUs. Second, it argues insofar as Grove Masonry did factually

provide notice, it was not provided within a reasonable time after it discovered or should have discovered the defects.

A. Failure to Plead Notice

Oldcastle asserts a complainant must explicitly plead its notification of non-conforming product to the opposing party because the notification is a condition precedent to its basis for recovery. Grove Masonry claims Oldcastle's cited law has been outmoded by a 1976 amendment to the Iowa Rules of Civil Procedure.

It is true that our supreme court has held in the past that "the giving of a notice must be pleaded as a condition precedent to recovery." *Winter v. Honeggers & Co., Inc.*, 215 N.W.2d 316, 327 (Iowa 1974); *see Henschel v. Hawkeye-Security Ins. Co.*, 178 N.W.2d 409, 417 (Iowa 1970) ("For pleading purposes, at least, a condition precedent is one whose performance or occurrence plaintiff must prove in order to recover.").

However, in 1976, the Iowa Rules of Civil Procedure were amended to substantially lower the burden on plaintiffs to manage arcane technical requirements in pleading.

> Under [the new] rule, the principal function of pleadings is to give the adverse party fair notice of the claim asserted in the form of a generalized summary sufficient to allow that party to make an adequate response. . . . It will no longer be necessary to determine whether the rigid requirements of a "cause of action" have been pleaded. Distinctions under the former rule between "ultimate facts" which were required to be pleaded and "evidence" and "conclusions of law" which were prohibited in pleadings are abolished.

Iowa R. Civ. P. 69 cmt. (1976).[2]  Since the amendment, our supreme court has noted when necessary that former pleading rules no longer apply.  *See Am. Nat. Bank v. Sivers*, 387 N.W.2d 138, 139–40 n.1 (Iowa 1986) (holding relevant portion of 1931 Iowa Supreme Court case "has no applicability under our present rules of notice pleading").  Our supreme court regularly considers factual satisfaction of conditions precedent, but has not revisited its requirement to *plead* conditions precedent since the amendment of the rule.

In the absence of such a ruling from our supreme court, Oldcastle relies upon two cases from this court and one from the federal district court in Iowa's northern district.[3]  We agree with the district court's analyses of these cases.  In *Mosebach v. Blythe*, 282 N.W.2d 755, 759 (Iowa Ct. App. 1979), this court denied relief when a plaintiff failed to address a condition precedent in his pleadings.  In *Mosebach*, we relied on *Henschel*, a pre-amendment case.  *Henschel*, 178 N.W.2d at 420.  Additionally, we did not address the effect or lack of effect of the amendment and held alternatively the plaintiff could not recover due to factual non-satisfaction of the condition.  *Mosebach*, 282 N.W.2d at 759.  This case alone is not sufficient to establish the pleading requirement remains in effect.

In *Randa v. U.S. Homes, Inc.*, 325 N.W.2d 905, 909–10 (Iowa Ct. App. 1982), this court suggested in dicta—but did not hold—that *Winter*'s pre-

---

[2] The rule is now found at Iowa R. Civ. P. 1.402.

[3] Oldcastle additionally cites one Iowa Supreme Court case.  *See Hartford-Carlyle Sav. Bank v. Shivers*, 566 N.W.2d 877, 881 (Iowa 1987).  However, *Hartford* does not support Oldcastle's position.  It acknowledges in dicta the requirement existed pre-amendment but does not endorse, rely upon, or renew it.  *Id.*

amendment pleading requirement may still be in effect. We went on, however, to decide the case on other grounds, and our language addressing the pleading requirement[4] was not conclusive and is not now controlling.

In *Wright v. Brooke Group Ltd.*, 114 F. Supp. 2d 797, 829–30 (N.D. Iowa 2000), the federal district court noted in dicta that the pre-amendment pleading requirement is still effective, relying on *Randa*. The court failed to address or consider the effect of the amended rule of civil procedure on the pleading requirement. Further, under the court's interpretation of the pre-amendment law, the plaintiff's filing of a suit itself satisfies the condition by providing notice. *Wright*, 114 F. Supp. 2d at 830. *Wright* does not support Oldcastle's position on the pleading issue.

Oldcastle has identified a gap in our notice pleading jurisprudence, but it has not persuaded us that a pre-amendment formalistic pleading requirement survived Iowa's adoption of its current notice pleading system, in which "[o]nly a general statement of the claim is required." *Christensen v. Shelby Cnty.*, 287 N.W.2d 560, 563 (Iowa 1980). Grove Masonry's pleadings do not preclude it from recovering even though the record shows "it is undisputed that [it] failed to plead notice."

B. Failure to Give Timely Notice

Oldcastle's second argument regarding the requirement to provide timely notice of the defect is that Grove Masonry's notice was categorically not timely relative to the shotgun blocks because Grove Masonry installed the blocks before

---

[4] "It has been held that []the giving of a notice must be pleaded as a condition precedent to recovery." *Randa*, 325 N.W.2d at 909.

giving notice.[5]  Oldcastle argues the installation renders notice untimely as a matter of law.  Grove Masonry argues the timeliness determination is one of fact and this court must defer to the district court's finding of timeliness unless it is not supported by substantial evidence.

This court has previously held "sufficiency and reasonableness are fact questions" in the context of the notice provision in Iowa Code section 554.2607(3)(a).  *Tyrrell Cos., L.C. v. Tegeler Design Ctr., Inc.*, No. 03-0258, 2003 WL 23219948, at *1 (Iowa Ct. App. Nov. 26, 2003).  However, Oldcastle notes that *Tyrrell* does not indicate whether timeliness is to be determined as a matter of law and cites to cases in other jurisdictions either explicitly or implicitly holding notice untimely as a matter of law when construction materials are installed.[6]

Regardless, we find the district court's determination that the notice was provided within a reasonable time is not supported by substantial evidence.  The district court's findings of fact and the record as a whole lack necessary specificity.

The district court wrote that Grove Masonry discovered the defects and notified Oldcastle of them "in the same time frame: in the springtime, March into April."  In reviewing the record, we note the testimony that the district court deemed credible actually reflects a fluctuating time frame in which the defects were discovered and Oldcastle was notified.  Though the district court described

---

[5] Oldcastle does not contest that notice was timely provided relative to the bubble block.
[6] *See Wilke Metal Products, Inc. v. David Architectural Metals, Inc.*, 236 N.E.2d 303, 305–06 (Ill. App. Ct. 1968); *P & F Constr. Corp. v. Friend Lumber Corp. of Medford*, 575 N.E.2d 61, 63–64 (Mass. App. Ct. 1991); *Archstone v. Tocci Bldg. Corp. of New Jersey, Inc.*, 101 A.D.3d 1057, 1058–59 (App. Div. N.Y. 2012).

the time frame as March and April of 2010, the testimony reflects the discovery and notification periods were in fact anywhere between January and May.

The findings of the district court also fail to account for the testimony indicating that defective CMUs were continually installed even after the defects were initially discovered or reasonably should have been discovered.[7] These facts extend the reasonable-time calculus beyond simply the number of days between discovery and notification.

Between the imprecise evidence concerning the dates of discovery and notification and the continued installation of CMUs in spite of defects, we cannot say the evidence is sufficient for a neutral, detached person to conclude notification was reasonably timely, especially because the consequences are of considerable importance due to the amount of damages sought.

We reverse the district court's finding of timely notice of defective shotgun block and remand to the district court for determination of what portion, if any, of the damages arose from Grove Masonry's installation of shotgun block it knew or should have known was defective and remove that portion of liability from judgment entered against Oldcastle.

**IV. Consequential Damages**

Oldcastle next appeals the district court's award of approximately $1 million in consequential damages to Grove Masonry for profits lost as a result

---

[7] Because Iowa Code section 554.2607(3)(a) requires notice when a buyer *should have* discovered the defect and the defective "shotgun block" was patently defective, Grove Masonry was under a duty to notify Oldcastle of the defect when it should have inspected the block without regard to whether it in fact discovered the defect before or after installing the CMUs.

of Oldcastle's breach of the implied warranty of merchantability. A buyer may recover consequential damages from a breaching seller pursuant to Iowa Code section 554.2715.[8] Recoverable consequential economic losses "include[] loss of profits resulting from failure of the goods to function as warranted, loss of goodwill, . . . loss of business reputation, and other loss proximately resulting from a defective product beyond direct economic loss." *Beyond the Garden Gate, Inc. v. Northstar Freeze-Dry Mfg., Inc.*, 526 N.W.2d 305, 309 (Iowa 1995) (citation omitted).

"[T]he buyer who has accepted goods and then discovers their defects must show that the seller had reason to know at the time of contracting of the buyer's possible losses caused by a breach to recover consequential damages." *Nachazel v. Miraco Mfg.*, 432 N.W.2d 158, 160 (Iowa 1988). The losses must be foreseeable, and losses are foreseeable "if they follow in the ordinary course of events, but also as a result of special circumstances." *Id.* Iowa courts focus on whether the *type* of damages was foreseeable rather than whether the specific injury itself was foreseeable. *Kuehl v. Freeman Bros. Agency, Inc.*, 521 N.W.2d 714, 718–19 (Iowa 1994).[9]

---

[8] Iowa Code section 554.2715 provides:
> Consequential damages resulting from the seller's breach include
> > *a.* any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and
> > *b.* injury to person or property proximately resulting from any breach of warranty.

[9] Oldcastle notes the cases espousing this principle do not apply Iowa Code chapter 554. The cases are nevertheless still applicable to demonstrate how Iowa courts interpret the chapter's reasonable foreseeability requirement.

At trial, Grove Masonry requested three categories of consequential damages: damages arising from a loss of goodwill, damages arising from a loss of business reputation, and damages arising from loss of profits. The district court held Grove Masonry could not recover on the first two categories because any calculation to determine the economic value of such a loss would be purely speculative. However, the court found that Grove Masonry's loss of profits was measurable, foreseeable, and proximately caused by Oldcastle's breach.

Oldcastle argues the district court's award is improper because the damages are speculative in their entirety or were largely unforeseeable. We first address Oldcastle's claim that the damages were speculative. Oldcastle claims the district court contradicted itself when it refused to award Grove Masonry consequential damages as a result of loss of goodwill or business reputation because the measure of those injuries would be speculative. At the same time, it awarded damages to account for profits lost as a result of a loss of goodwill and business reputation.

The district court's holding was not contradictory. The district court did not hold that the injury to Grove Masonry's goodwill or business reputation itself was speculative. It held any dollar amount assigned to those injuries would be speculative. However, the measure of lost profits was not guesswork—it was supported by trial testimony and calculations asserted by both parties. The measurable injury of lost profits resulted from the immeasurable injuries to Grove Masonry's goodwill and business reputation. But it does not follow that the lost profits are therefore speculative themselves.

We next consider whether the lost profits were foreseeable. Oldcastle argues they were not foreseeable because the actual cause of the $1 million in lost profits was Grove Masonry's inability to obtain performance bonds after falling on economic hardships.[10]

However, the district court found it was "reasonably foreseeable at the time of contracting that a breach of warranty of merchantability would result in lost profits." In ruling on Oldcastle's post-trial motion, it further noted, "[T]he evidence presented . . . warranted the lost profits damages, *notwithstanding the loss of bonding capacity.*"[11] The foreseeability question on appeal, therefore, is whether there is substantial evidence to support the district court's finding that lost profits—vis a vis lost customers—was a reasonably foreseeable consequence of Oldcastle's breach at the time of contracting.

The record demonstrates that the Ankeny projects were of such a size and profile that Grove Masonry's performance on those jobs could foreseeably have affected its future business prospects. It was reasonably foreseeable at the time of contracting that Grove Masonry's future contracts with other customers,

---

[10] A contractor's loss of bonding ability has been held unforeseeable in transactions similar to the one at hand in other jurisdictions. Oldcastle cites cases considering this issue from several states. *See Lewis Jorge Const. Mgmt., Inc. v. Pomona Unified Sch. Dist.*, 102 P.3d 257 (Cal. 2004); *MLK, Inc. v. Univ. of Kansas*, 940 P.2d 1158 (Kan. 1997), *Daniel E. Terreri & Sons, Inc. v. Mahoning Cnty. Bd. of Commrs.*, 786 N.E.2d 921 (Ohio Ct. App. 2003); and *NAJLA Assocs., Inc. v. William L. Griffith & Co.*, 480 S.E.2d 492 (Va. 1997). These cases demonstrate that the loss of bonding capacity may not be reasonably foreseeable depending on the particular factual circumstances of each case, but they do not persuade us that the loss of bonding capacity should be unforeseeable as a matter of law in Iowa as Oldcastle asserts. Instead, we review the district court's findings of fact for substantial evidence that supports them.

[11] Contrary to Oldcastle's refrain, the district court neither "ignored [n]or evaded" the issue of foreseeability of Grove Masonry's loss of bonding capacity. The court simply found Grove Masonry had proved its claim for damages for lost profits.

retention of existing customers, and acquisition of new customers could depend upon the quality of its work product, i.e., the quality of the CMUs it purchased from Oldcastle. There is substantial evidence to support the district court's finding that the type of profits ultimately lost—future contracts with other customers—was reasonably foreseeable to the parties at the time of contracting.[12]

Oldcastle raises one further question: whether, if lost profits were in fact reasonably foreseeable, they were foreseeable to the extent to which they have been awarded—i.e., whether the consequential damages awarded must be of a foreseeable *extent* in addition to a foreseeable *type*. Our jurisprudence does not directly address the issue,[13] but Iowa law does not require that the lost-profits damages be per se proportionate to the value of the original contract. Nor is there any indication in the record that the damages awarded in this case are disproportionate under the circumstances.

We find nothing in the record to indicate the extent of the damage shown in this case was not as foreseeable as its type given the value of Grove Masonry's typical project. Despite Oldcastle's assertion, the bare value of the

[12] Our holding on this matter does not mean that there is a lack of substantial evidence that suggests Grove Masonry's loss of bonding capacity is the actual cause, in whole or in part, of the loss of profits. Rather, that question is simply not within the scope of our review. Oldcastle's preoccupation with Grove Masonry's bonding capacity has caused it to misapprehend the issue. We are not searching for alternative causes of the lost profits; we are searching for evidence supporting the district court's conclusion as to the cause.

[13] Oldcastle's only citation for its claim is to a case from a federal district court in Tennessee. *Great Am. Music Mach., Inc. v. Mid-S. Record Pressing Co.*, 393 F. Supp. 877, 885 (M.D. Tenn. 1975). While this case expresses its reasoning for a general proportionality requirement, it is not a statement of controlling law in Iowa and is not persuasive given the current state of the law in Iowa.

CMUs in this case does not arbitrarily limit the extent of foreseeable lost-profit damages.

We therefore affirm the district court's conclusion that Grove Masonry suffered $1,005,961 in foreseeable consequential damages, and it may therefore recover from Oldcastle.

### V. Payment for Goods

Oldcastle lastly appeals the district court's denial of its claim it pleaded as an amount owed on an open account between itself and Grove Masonry. Grove Masonry denies the existence of an open account, and the district court found there was none. The questions before this court on appeal therefore are whether the parties maintained an open account in which there currently rests a balance owed to Oldcastle and whether the court properly limited Oldcastle's claim under our notice pleading rules discussed earlier in the context of Grove Masonry's failure to plead notice of breach in its counterclaim.[14]

At trial, Oldcastle proved Grove Masonry continued to accept delivery of product, it did not pay for that product, and the amount owed for the product it accepted. The district court denied the claim for the amount owed because Oldcastle's pleadings described that amount owed as an open account, and the

---

[14] Oldcastle's appeal is largely predicated on the principle of Iowa Code section 554.2709, which provides, "When the buyer fails to pay the price as it becomes due the seller may recover . . . the price . . . of goods accepted . . . ." This provision allows a seller to recover the contract price of the goods accepted by the buyer regardless of any other breach of contract actions taken by the buyer against the seller. Grove Masonry correctly notes that Oldcastle made no claim under section 554.2709 at trial and no such claim is preserved for our review. Rather, Oldcastle asks this court to reverse the district court on its denial of the open account claim in order to effectuate the policy goal of section 554.2709. The actual effect of section 554.2709 on the facts of this case, however, is not an issue before us.

district court decided those transactions fell outside the technical definition of an open account. The district court's reliance on a pleading technicality to deny its claim frustrated Oldcastle's ability to recover payments to which it was entitled.

However, even under its open account claim, Oldcastle is entitled to recover. The controversy arises in the parties' competing interpretations of our supreme court's decision in *Roger's Backhoe Serv., Inc. v. Nichols*, 681 N.W.2d 647, 650 (Iowa 2004). In *Roger's Backhoe*, the court held:

> [I]n a general sense, [an account] encompasses any claim or demand based on a transaction creating a debtor-creditor relationship. . . . [W]hen the evidence fails to establish the elements of an account stated, the creditor may nevertheless recover by proving a contractual obligation for the individual terms in the account and the fair and reasonable value of the amounts claimed.

*Id.* (citations omitted). Oldcastle asserts the multiple contracts for sale between itself and Grove Masonry are transactions creating a debtor-creditor relationship in which Oldcastle credits Grove Masonry the value of the goods upon delivery for future payment on that debt.

The district court and Grove Masonry rely upon a 1931 case in which our supreme court held, "A series of independent express contracts for services to be performed for an agreed compensation does not constitute an open continuous current account." *Sammon v. Roach*, 235 N.W. 78, 79 (Iowa 1931). We find *Sammon*, to the extent it remains good law in light of our more recent jurisprudence, is distinguishable. The quoted language in context does not categorically foreclose Oldcastle's claim. *Sammon* dealt with a quantum meruit

claim[15] in which the individual contracts had been paid in full as they became due. The *Sammon* court's statement about open accounts related only to the quantum meruit claim before it, as the language of the decision as a whole makes clear.[16]

Additionally, *Sammon* did not outright define an open account, but relied on other cases, such as *Tucker v. Quimby*, 37 Iowa 17, 19 (1873), which stated, "a 'continuous, open, current, account,' is an account which is not interrupted or broken, not closed by settlement or otherwise, and is a running, connected series of transactions." The *Tucker* language aptly describes the relationship between Oldcastle and Grove Masonry as the former continued to supply the latter with goods without receiving payment for previous deliveries.

We agree with Oldcastle that the district court's interpretation of our supreme court's dictates in *Roger's Backhoe* is improperly constrained by its reading of *Sammon*. The transactions at issue in this case span multiple overlapping, unbroken contractual obligations creating an account that was never settled. The amount Oldcastle asserts it is owed is not derived from a single

---

[15] Quantum meruit "denote[s] a particular subclass of implied-in-fact contracts." *Iowa Waste Sys., Inc. v. Buchanan Cnty.*, 617 N.W.2d 23, 29 (Iowa Ct. App. 2000). *Sammon*'s holding involved a quantum meruit assertion that a previously agreed-upon *and paid* amount was not an equitable payment for services rendered. Such a consideration is naturally distinguishable from the case at hand, in which Oldcastle has established an ongoing series of contracts in which it continued to deliver goods while prior contracts remained unpaid.

[16]     [Our conclusion] would seem to be clear upon reason and without the necessity of authority to support it. The rule is well settled in this state that, where a cause of action is based solely upon quantum meruit, recovery cannot be had if the proof offered in support thereof establishes an express contract. It is equally true that, if the cause of action is based upon contract, recovery may not be had upon the theory of quantum meruit.

*Sammon*, 235 N.W. at 79.

"contract for a lump sum." *McIntire v. Muller*, 522 N.W.2d 329 (Iowa Ct. App. 1994). Oldcastle proved Grove Masonry had not paid for CMUs it accepted, and should have prevailed on this claim.

We reverse the district court's judgment against Oldcastle in its count II styled as an open account claim. Grove Masonry must pay for the $155,572.74 in goods it accepted. That amount may be used to offset damages awarded to Grove Masonry. We remand for further proceedings consistent with this opinion.

**VI. Conclusion**

As to Oldcastle's claim that Grove Masonry was entirely precluded from recovery because it failed to plead the condition precedent that it gave timely notice of the defect, we affirm the district court. Grove Masonry's pleadings gave Oldcastle fair notice of the claim sufficient to allow it to make an adequate response and were therefore sufficient to permit recovery.

As to Oldcastle's claim that Grove Masonry was partially precluded from recovery because it failed in fact to provide timely notice of the patently defective shotgun block, we reverse the judgment entered and remand for recalculation of damages.

As to Oldcastle's claim that the district court's consequential damages award was improper because it was not foreseeable, we affirm the district court. Substantial evidence exists in the record that Grove Masonry's loss of future contracting partners was reasonably foreseeable at the time of contracting.

As to Oldcastle's claim that the district court's consequential damages award was improper because it was speculative, we affirm the district court. The

damages were the result of evidence properly before the court and thorough calculations based on that evidence.

As to Oldcastle's open account claim, we reverse the district court's entry of judgment in Grove Masonry's favor and remand for further proceedings.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**