*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1784**

State of Minnesota,
Respondent,

vs.

John Edward Hall, Jr.,
Appellant.

**Filed October 5, 2015
Reversed and remanded
Ross, Judge**

Olmsted County District Court
File No. 55-CR-13-4673

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Mark A. Ostrem, Olmsted County Attorney, James P. Spencer, Assistant County Attorney, Rochester, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Sara L. Martin, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Ross, Presiding Judge; Rodenberg, Judge; and Harten, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**ROSS**, Judge

A jury heard evidence that John Hall had assaulted and threatened his former wife on two different days and found him guilty of domestic assault and making a terroristic threat. Hall contends that the district court should have given a specific-unanimity instruction to ensure that the jury would convict him only if every juror based his or her guilty verdict on conduct that occurred on the same day. Because the instructions did not require the jury to unanimously agree on which allegedly criminal acts Hall committed and the jury received evidence that might have supported a conviction based on different behavior occurring on different days, the guilty verdict cannot support Hall's conviction. We find plain error and reverse Hall's convictions and remand for a new trial.

## FACTS

John Hall's former wife, C.H., allowed Hall to stay in her home in early July 2013 because Hall had been consuming alcohol and the halfway house where he had been residing prohibits alcohol use. After Hall admittedly spent a binge week "watching T.V. and eating and passing out and drinking," on July 16 C.H. dialed 9-1-1 to report that Hall threatened to kill her and her family.

Police arrived and Hall answered the door drunk. C.H. appeared to have been crying. She told one officer that Hall had just made the reported threat if she refused to give him money for more alcohol. Specifically, Hall had said "that he had a .45 and that he would get it." She explained that Hall had made similar threats the previous evening, which she had recorded. She played the audio recording to the officers:

2

Hall:   I asked you for 20.

C.H.:   I already gave you 20, John.

. . . .

Hall:   Are you gonna be a f---ing b---h? F---ing not give me another 20? Then, I—I can't be responsible for the consequences - responsible for—all you can really do is put me in jail. And that's fine. 'Cause I'll get out and then I will really be f---ing pissed. And I will f---ing murder people. F---ing, I will murder your grandma, your grandpa, your sister, your other sister. I'll roll out to f---ing Oakland and murder your brother. Since he's too big of a f----t to come here and protect his sister. And, when I'm done, I'll murder you. Think I'm kidding? For 20 bucks. Think I'm kidding? Do I look like I'm kidding? I'll have you in that chair before I'm kidding. I murder people for a living. And get away with it. Don't think I'm f---ing clowning. Don't ever for—f--- with me. You listen to me. (Unintelligible). Oh, I'll—I'll do my five years and I'll get out and I'll do it and I'll rock it. I'll rent cars, I will get b---hes. I will (unintelligible). For God d--- sure. And after those, those (unintelligible). And I will kill everyone in your f---ing family. Don't think I'm kidding. Don't ever, ever, ever, ever. So, sit down and eat your dinner and think about if you might have swiped that card from me. All right? Does that sound like it's—our—our (unintelligible). I'm a little intoxicated right now. But I will sober up. And that's all I want. A bottle. All right? To borrow me (unintelligible). Think about it. Do you want your family dead? 'Cause I'll kill them all. And I'll go to prison for life. I don't give a f---. I been to prison. It ain't sh--. I'll do it. I'll do it again. And I'll do it again. And I'll do it again. Okay? I will go to f---ing prison for life. If that means taking your family. You - your whole mother-f---ing family out. You laughing? You think that's funny?

C.H.:   (shouting) Don't! Stop it! Get out of here!

3

> Hall: Think that's funny? You want to laugh at me? Don't ever laugh at me.[1] . . . And get away with it. Don't ever think I won't.
>
> C.H.: Get your finger out of my face! (shouting) Don't touch me!
>
> Hall: You call Abby and find out what kind of n----r I am. Who the f--- I was in my twenties.
>
> C.H.: Leave me alone, please.
>
> Hall: You don't care - I'll smack the sh-- out of you. And sh--. Call the cops on me? That's right. I'll do my time. But guess what? When I get out, I'll be healed, legs won't hurt no more. And n----rs gonna go to the graves. Starting with your grandma and your grandpa. Who are already in their graves anyway. . . . (Unintelligible). Try me. See what's up. See what I'm about.

C.H. explained to the officer that, during the exchange, Hall struck her in the face.

Police arrested Hall, who told an officer that he would "beat [his] a-- and put [him] in the hospital."

The state charged Hall with two crimes occurring "[o]n or about July 16, 2013." It charged him with one count of making terroristic threats to commit a violent crime, under Minnesota Statutes section 609.713, subdivision 1 (2012), and one count of fear-based domestic assault, under Minnesota Statutes section 609.2242, subdivision 4 (2012). At the beginning of Hall's trial, the prosecutor suggested that she would amend the complaint to refer specifically to both July 15 and 16 rather than using "the on or about language." The district court deemed the amendment unnecessary and the case proceeded without it.

---

[1] The recording depicts no audible laughter.

4

The state's witnesses testified to Hall's allegedly threatening conduct on both dates, July 15 and 16, and the jury heard the audio recording.

Hall claimed that C.H. was "a liar" and that the recording was made years earlier. He challenged C.H., cross-examining her about the date of the recording and asking, among other things, whether she had "ever writ[ten] down anything on paper stating that [the recorded incident] had happened at a different time than the night before."

After this focus at trial on the date of the recorded threatening comments, the district court finally directed the state to amend the complaint to change the date of the offensive conduct from "[o]n or about July 16" to "on or about July 15." The court did not reopen the case for additional evidence about the date of any of the conduct. Echoing the amended complaint, it instructed the jury that it could find Hall guilty if it found that he engaged in criminal conduct "on or about July 15." The prosecutor's closing argument referred to Hall's conduct on both July 15 and July 16.

The jury found Hall guilty on both counts, and the district court sentenced Hall to 20 months in prison for terroristic threats. It did not sentence him for the domestic-assault conviction.

Hall appeals his convictions.

## DECISION

Hall argues that his convictions should be reversed for three reasons. We begin and end only with his argument that the district court committed plain error by failing to provide a specific-unanimity instruction.

Hall argues that the district court erroneously instructed the jury that a guilty verdict required it to find that Hall had engaged in criminal acts "on or about July 15" because the instruction's imprecise date allowed different jurors to base their guilty verdict on different conduct. Hall neither requested a specific-unanimity instruction at trial nor objected to the instructions given, so we will review the instructions only for plain error. *See State v. Ihle*, 640 N.W.2d 910, 918 (Minn. 2002). Under this standard, Hall can secure a reversal only if he shows that the district court erred by not giving the instruction, that the error was plain, and that the error affected his substantial rights. *State v. Strommen*, 648 N.W.2d 681, 686 (Minn. 2002). Hall must also establish that we should reverse because failing to reverse would "seriously affect[] the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quotation omitted).

Criminal jury verdicts must be unanimous. *State v. Pendleton*, 725 N.W.2d 717, 730 (Minn. 2007). That is, the jury must "unanimously agree on which acts the defendant committed if each act itself constitutes an element of the crime." *State v. Stempf*, 627 N.W.2d 352, 355 (Minn. App. 2001). To find Hall guilty of domestic assault, the jury had to find that he acted "with intent to cause fear in another of immediate bodily harm or death." Minn. Stat. § 609.2242, subd. 1 (2012). To find him guilty of making terroristic threats, it similarly had to find that he threatened to "commit any crime of violence with purpose to terrorize another . . . or in a reckless disregard of the risk of causing such terror." Minn. Stat. § 609.713, subd. 1 (2012).

Hall argues that the instructions leave unclear whether the jury convicted him unanimously. The argument accurately highlights an instructional error. It is clear from

the record that the state presented evidence that Hall threatened to kill C.H. It is equally clear that the state presented evidence of a qualifying threat occurring on July 15 and other evidence of a qualifying threat occurring on July 16. Either day's alleged threatening conduct might satisfy the elements of either charge. The district court recognized this, opining expressly that the state had essentially alleged four separate crimes while charging only two. After receiving all the evidence, the district court attempted to remedy the problem that the prosecutor had noticed and tried to fix at the beginning of trial. It did so by instructing the jury vaguely to consider Hall's conduct "on or about July 15." We think this attempted remedy fails to fix the problem. The on-or-about instruction invited the jury to consider Hall's acts "on" July 15 and also his acts "about" July 15. July 16 is of course "*about*" July 15. A unanimity instruction in this case was therefore essential, and failure to give the instruction is plainly an error.

Hall meets his heavy burden of showing prejudice. Prejudice exists if there is a reasonable likelihood that a specific-unanimity instruction "would have had a significant effect on the verdict of the jury." *State v. Wenthe*, 865 N.W.2d 273, 299 (Minn. 2015) (quotation omitted). An instruction requiring jurors to find guilt based on the same conduct would have affected the verdict if the jury received evidence of separate acts and some jurors could have reasonably concluded that only one of these acts constituted the charged crime while other jurors could have reasonably believed that only another act was a crime. *See id.* at 300. That is the case here. The district court essentially asked the jury to base its verdict on conduct occurring on either date or on both dates. Given the on-or-about instruction and the jury's general verdict of guilt, no one can know whether all

jurors based their decision on the same arguably culpable conduct. The jury verdict demonstrates that all jurors believed part of C.H.'s testimony, but it does not establish that all jurors believed *all* of her testimony. *See State v. Holbrook*, 305 Minn. 554, 557, 233 N.W.2d 892, 894 (1975) (holding that a jury can choose which aspects of a witness's testimony to accept). Some jurors might, for example, have convicted Hall based on evidence of his threats on July 15, and others based on evidence of his threats on July 16. Some may have believed the recording was made years before July 15 (as Hall argued) and yet believed C.H.'s report to police that Hall had threatened her on July 16. Others might have been convinced by the recording and testimony that Hall threatened C.H. on July 15 but doubted that he repeated the threats on July 16. Some jurors might have believed that both accounts occurred as C.H. stated, but that Hall's alleged threats of July 16—"that he had a .45 and that he would get it"—satisfied the immediacy requirement in the domestic assault statute while Hall's recorded threats allegedly of July 15 did not.

None of these potential conclusions is unreasonable based on the testimony and argument. Hall has shown the requisite prejudice requiring us to consider reversing his convictions based on the plain error. Because the guaranty of a unanimous verdict is fundamental to establishing guilt and the risk of an unclear verdict was so evident that both the prosecutor and the district court recognized that the dates in the charge could result in an unclear verdict, under the circumstances of this case we also conclude that a new trial is necessary to ensure the fairness, integrity, or public reputation of judicial proceedings generally.

We reverse and remand for a new trial. We do not address Hall's other arguments.

**Reversed and remanded.**